LAURIE FRYMAN, Plaintiff-Appellant, v. JMK/SKEWER, INC., *et al.,* Defendants (The County of Peoria, Defendant-Appellee).—BARBARA E. CLAPP *et al.,* Plaintiffs-Appellants, v. JMK/SKEWER, INC., *et al.,* Defendants (The County of Peoria, Defendant-Appellee).

Third District Nos. 3—84—0778, 3—84—0816 through 3—84—0821, 3—85—0012, 3—85—0025, 3—85—0038, 3—85—0039 cons.

Opinion filed October 16, 1985.

612

David W. Stuckel, of Harvey & Stuckel, of Peoria, for appellant Laurie Fryman.

Jay H. Janssen and Jerelyn D. Maher, both of Peoria, for appellants Barbara E. Clapp and Roger A. Clapp.

R. Michael Henderson and John P. Fleming, both of McConnell, Kennedy, Quinn & Johnston, of Peoria, for appellee.

PRESIDING JUSTICE HEIPLE delivered the opinion of the court:

This is a consolidated interlocutory appeal from the dismissal of all counts directed against the county of Peoria (the county) in this personal injury action. We affirm.

The facts of this case as extracted from the representative Fryman complaint are relatively simple. It is alleged that in October 1983, the Peoria County health department became aware that the Skewer Inn restaurant was serving contaminated food. No action was taken to either close Skewer Inn down or warn patrons that they might be exposed to contamination. Later that month, the plaintiffs ate food containing clostridium botulinum, the bacteria associated with the food poisoning known as botulism.

The trial court dismissed all complaints directed against the county. The cases were consolidated and and certified for interlocutory appeal pursuant to Supreme Court Rule 304(a) (87 Ill. 2d 304(a)).

This appeals presents one main issue (and several related subissues): Does the county owe a duty to the individual plaintiffs so that a breach of that duty would give rise to a private action under the facts alleged in the several complaints? We hold that it does not.

 It is axiomatic that a duty running from defendant to plaintiff must be shown before an action in tort will lie. (*Lance v. Senior* (1967), 36 Ill. 2d 516, 224 N.E.2d 231). There is little doubt that the county through its health department had a statutory duty to inspect the Skewer Inn. But the greater question remains: To whom was this duty owed? It has consistently been held in Illinois that a governmental body, when exercising its authority pursuant to a governmental duty and for a governmental purpose, cannot be liable to a private plaintiff for the negligent exercise of that authority (*Hannon v. Counihan* (1977), 54 Ill. App. 3d 509, 369 N.E.2d 917). To ascertain

whether the improper exercise of authority is actionable, courts have distinguished those functions which are truly governmental in character from those which are not. The resolution of this distinction requires an analysis of the manner and setting in which the authority is exercised. The traditional analysis inquires whether the governmental action is "discretionary" or "ministerial." The latter is actionable, the former is not. The reason for this distinction is that discretionary activities require that the public servant use his judgment in deciding whether a certain course of conduct would best promote the public good. (*Madden v. Kuehn* (1978), 56 Ill. App. 3d 997, 372 N.E.2d 1131.) This judgment involves the consideration of innumerable factors, not the least of which is that someone's ox will be gored. In order to carry out his duties in the public's interests, the public servant must be free from the threat of a lawsuit by those adversely affected by his discretionary decision. Improper exercise of a ministerial function is not so protected. (*Merrill v. City of Wheaton* (1942), 379 Ill. 504, 41 N.E.2d 508.) When important interests are damaged by the failure of a public servant to perform his routine and mechanical tasks properly, no public policy considerations are compromised by holding him responsible. Another recognized exception is for "corporate" functions carried out by a municipality. When a municipality engages in an enterprise which it is authorized to carry out, but is not essentially a governmental function, the municipality is liable when the negligence of its agents or employees causes harm to third persons. *Gravander v. City of Chicago* (1948), 399 Ill. 381, 78 N.E.2d 304.

Plaintiffs argue that the facts as alleged indicate that the county's agents failed to perform a ministerial function. It is urged that once it became apparent that contamination was present, all that was left to do was to either shut the restaurant down or cart off all the contaminated food on the premises. Alternatively, they quote the enabling statute and argue that the mandatory language therein indicates that inspections are a ministerial function of the health department. Ill. Rev. Stat. 1981, ch. 111½, par. 20c13(6).

■ Both arguments miss the point. Once the health department discovered contamination, the nature and extent of its duty changed. However, the persons to whom this duty ran did not change. It was still engaged in the inherently governmental task of enforcing the county health ordinances. Hence, a failure to enforce the law to the damage of third persons occurred. Such a failure is not actionable. *Adamczyk v. Zambelli* (1960), 25 Ill. App. 2d 121, 166 N.E.2d 93.

*Adamczyk* is but one in a long line of cases insulating public bodies from liability for negligent enforcement of the law. In *Stigler*

*v. City of Chicago* (1971), 48 Ill. 2d 20, 268 N.E.2d 26, an action was brought against the city for failure to enforce its housing code. The infant plaintiff had become ill from eating paint chips containing lead. The court held as follows:

"This ordinance was enacted to benefit the public health and safety of the people of the city. Its enforcement was a governmental function rather than a ministerial or proprietary act. The ordinance did not give rise to any special duty to the plaintiff or to any particular person different from the public at large. (citation) If the failure of the city to enforce this ordinance should render it liable for injuries sustained thereby, the tremendous exposure to liability would certainly dissuade the city from enacting ordinances designed for the protection and welfare of the general public, and thereby the general public would lose the benefit of salutary legislative enactments." (*Stigler v. City of Chicago* (1971), 48 Ill. 2d 20, 24-25.)

Our supreme court has recently affirmed this basic approach in *Ferentchak v. Village of Frankfort* (1985), 105 Ill. 2d 474, 475 N.E.2d 822. There, it refused to hold the municipality liable for negligent enforcement of its building code where plaintiff's property was damaged because village officials had failed to inspect and require an adequate foundation for their new house.

■ Plaintiff's arguments regarding the duties created by the statute and ordinance are similarly misplaced. The statute limits the agency's enforcement of the laws to its "professional and technical competence." (Ill. Rev. Stat. 1981, ch. 111½, par. 20c13(6).) This alone supports the characterization urged by the county. Moreover, a statute directing or mandating the enforcement of the law creates necessarily governmental duties. First, it requires that one know what the law is. Next, one must apply the law to the facts. Finally, it must be decided to what extent the public interest demands strict or flexible enforcement. These last two decisions are entirely discretionary. Thus, the negligent execution of this discretion cannot give rise to a private action.

■ This so-called "public duty" rule contains a large exception. It sometimes happens that, in the course of enforcing the law, public officials will be put in a position where specific individuals come into their care or custody. When the public official negligently exercises care or custody over the individual and the individual is injured as a proximate result of this negligence, the public official is liable. (*Gardner v. Village of Chicago Ridge* (1966), 71 Ill. App. 2d 373, 219 N.E.2d 147.) This is known as the "special duty" exception. This ex-

ception follows logically from the general rule. Governmental acts are not generally actionable because the duty being carried out runs to the benefit of the public generally. If circumstances arise whereby it becomes the duty of a public official to act on behalf of a specific individual, his failure to carry out this duty in a nonnegligent manner should be actionable.

The four elements of this exception are recited in *Bell v. Village of Midlothian* (1980), 90 Ill. App. 3d 967, 414 N.E.2d 104. To wit:

> (1) the municipality must be uniquely aware of the particular danger or risk to which the plaintiff is exposed [citation];
>
> (2) there must be allegations of specific acts or omissions on the part of the municipality [citation];
>
> (3) the specific acts or omissions *** must be either affirmative or wilful in nature [citation]; and
>
> (4) the injury must occur while the plaintiff is under the direct and immediate control of employees or agents of the municipality [citation]." *Bell v. Village of Midlothian* (1980), 90 Ill. App. 3d 967, 970.

■■ Even a superficial reading of the first and fourth elements of the exception indicate that plaintiffs do not meet its requirements. Taking the complaint and all reasonable inference therefrom as true, it is clear that the county was not uniquely aware of the risks to which particular plaintiffs were exposed. The "unique awareness" prong of *Bell* is derived from *Huey v. Town of Cicero* (1968), 41 Ill. 2d 361, 243 N.E.2d 214. In *Huey* it was alleged, *inter alia*, that the town failed to warn a black person of the dangers of being on the streets of Cicero at a particular time. The court held that since it was not alleged that defendants knew of the particular black person's presence in town, or had reason to know that he required protection from a specific danger, no relationship could be found whereby a duty to warn would arise. Hence, it can be seen that what the *Bell* court meant by "uniquely aware," with reference to *Huey*, is that the municipality is on notice that a preventable danger threatens a particular individual of whom they are aware. It is obvious from the facts that the county had no knowledge of the danger to any specific individuals. The fourth point is even more compelling. Plaintiffs were obviously not under the direct and immediate control of the county. At most, one could argue that there was an indirect, constructive control when the county became empowered to shut down the restaurant upon finding contamination. This hardly rises to the level of immediate responsibility which the fourth element endeavors to establish.

■■ Plaintiffs contend that a duty arose when the county volun-

tarily undertook the duty to regulate and inspect food quality in public restaurants. The line of authority relied upon is viable, but distinguishable. In *Baran v. City of Chicago Heights* (1969), 43 Ill. 2d 177, 251 N.E.2d 277, the court held that where the city installed street lights negligently, thereby giving rise to a dangerous condition, it could be held liable. However, it specifically held that it was not reviewing the city's discretion in selecting a plan, nor was it passing upon the city's estimation of public needs. (43 Ill. 2d 177, 180.) It simply held the city to the standards of anyone whose conduct creates a hazardous condition. This is clearly different from the case at bar, where the municipality did not create the hazardous condition. *Cf. Michalak v. County of La Salle* (1984), 121 Ill. App. 3d 574, 457 N.E.2d 1131.

■ Plaintiff finally argues that the county's superior knowledge created a duty to warn of the dangers of dining at the Skewer Inn. The plaintiffs seek to fashion an exception to the public duty rule based only upon the fact that the county is in a better position than the public to prevent potential harm. Such a rule has no basis in precedent and is without merit. The notion that the county's superior knowledge could create a duty to a specific individual would effectively eviscerate the public duty rule.

It is worth noting that our decision in the instant case does not conflict with our holding in *Marshall-Putnam Farm Bureau, Inc. v. Shaver* (1973), 12 Ill. App. 3d 402, 299 N.E.2d 10, although it might appear so at first blush. There, plaintiff had specifically complained to officials of the city of Henry that the vacant building next door was in a dangerous condition. The building collapsed, damaging plaintiff's building. It was alleged that the city negligently failed to demolish the vacant building under the relevant statute or its inherent police power. We held that the complaint did not fail to state a cause of action. While this appears to contradict the instant holding, there is a satisfactory resolution of the two cases. In *Marshall-Putnam*, the court was considering the complaint from the perspective of a special duty based upon the city's knowledge of the condition and its awareness of the identity of the property at risk. (12 Ill. App. 3d 402, 405.) Admittedly, there is no discussion of the city having direct or immediate control of the plaintiff. Of course, this aspect of the special duty exception does not fit neatly into a property damage case. While *Marshall-Putnam* may have been decided differently had the full dress requirements of *Bell* been in existence, we believe it to be inconsistent with the instant case only to the extent that it did not have the benefit of the precedents available now.

■ As a final note, we are constrained to address the argument in plaintiff Clapp's brief that our decision is a resurrection of the constitutionally interred doctrine of sovereign immunity. Immunity is not at issue here. An immunity is a bar to liability when all elements of a cause of action have been established. We have already held that plaintiffs did not allege facts giving rise to a duty running from the county to them. Duty is an essential element of this cause of action. Therefore, immunity never comes into play.

Accordingly, we affirm the judgment of the circuit court of Peoria County.

Affirmed.

WOMBACHER and SCOTT, JJ., concur.