RONALD J. ECK, JR., Plaintiff-Appellant, v. McHENRY COUNTY PUB-
LIC BUILDING COMMISSION *et al.*, Defendants-Appellees (Jerome E.
Olsen *et al.*, Defendants).

Second District   No. 2—92—0277

Opinion filed December 4, 1992.

William F. Ryan and James M. Harman, both of Doyle & Ryan, Ltd., of Chicago, for appellant.

David R. Barry, Jr., and Matthew J. Schueler, both of Bollinger, Ruberry & Garvey, of Chicago, for appellees.

JUSTICE DOYLE delivered the opinion of the court:

Plaintiff, Ronald J. Eck, Jr., filed a six-count complaint in the circuit court of McHenry County against defendants, McHenry County Public Building Commission (PBC), McHenry County (County), Jerome E. Olsen, and Olsen and Associates, alleging negligence and violations of the Illinois Structural Work Act (Ill. Rev. Stat. 1991, ch. 48, pars. 60 through 69). Plaintiff appeals from the circuit court's order of PBC's and County's motions to dismiss the Structural Work Act counts. Jerome E. Olsen and Olsen and Associates are not parties to this appeal, and the remaining counts are not the subject of this appeal. The trial court's order contains the requisite Supreme Court Rule 304(a) finding (134 Ill. 2d R. 304(a)).

PBC and County contend that section 3—108(a) of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (Ill. Rev. Stat. 1991, ch. 85, par. 3—108(a)) bars a cause of action against a local public entity based upon alleged violations of the Illinois Structural Work Act (Ill. Rev. Stat. 1991, ch. 48, pars. 60 through 69). The County raises the additional issue of whether section 3—103(a) of the Tort Immunity Act provides it with immunity.

Counts I and III of plaintiff's second amended complaint alleged that on February 21, 1991, defendants PBC and County were the owners and general contractors of a structure being erected in the City of Woodstock, Illinois. On that date, plaintiff was employed as a journeyman carpenter with Kiewit Western, Inc. While he performed his duties, a scaffold upon which he was standing collapsed causing him to fall 35 feet to the ground.

Plaintiff further alleged that defendants, individually and through their agents, servants and employees, were present during the course

of the construction and erection of the structure; that defendants participated in and coordinated the work being done and designated various work methods; and that defendants maintained and checked the work progress and participated in the scheduling and inspection of the work. Additionally, defendants had the authority to stop the work, refuse work and materials, and order changes. The complaint further alleged that defendants were among the persons, firms, or corporations "having charge" of the construction and erection of the structure.

In his complaint, plaintiff alleged various violations of the Structural Work Act. Defendants allegedly permitted a scaffold to be utilized which was in violation of the prevailing safety codes of the Occupational Safety and Health Administration (OSHA). They also failed to provide adequate catch platforms or other safety devices so as to give proper and adequate protection to the life and limb of the plaintiff and failed to provide a proper scaffold. Plaintiff alleged that, as a proximate result of defendants' conduct, he sustained temporary and permanent injuries resulting in expenditures for medical treatment and a loss of earnings.

In response to plaintiff's original complaint, defendants filed separate motions to dismiss pursuant to section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—619). The parties subsequently stipulated that defendants' motions would apply to plaintiff's second amended complaint. In their motions, both PBC and County averred that section 3—108(a) of the Tort Immunity Act barred plaintiff's cause of action based upon the Structural Work Act. County's motion further averred that plaintiff's Structural Work Act cause of action was barred under section 3—103(a) of the Tort Immunity Act (see Ill. Rev. Stat. 1991, ch. 85, par. 3—103(a)).

The circuit court entered its order granting defendants' motions to dismiss with prejudice counts I and III of plaintiff's second amended complaint. Plaintiff then filed this timely appeal.

Because of the substantial similarity of counts I and III and the similarity of defendants' motions, we will discuss them together for the purposes of this appeal. Plaintiff's primary appellate contention is that the plain language of the Tort Immunity Act evidences that the legislature did not intend to preclude a cause of action against a local public entity founded upon violations of the Structural Work Act. Defendants respond to the contrary and direct our attention to *Eiben v. E.J. Cattani & Sons, Inc.* (1991), 217 Ill. App. 3d 609, wherein the Appellate Court, Third District, held that section 3—108(a) of the Tort

Immunity Act barred a Structural Work Act cause of action against Bureau County.

Upon review of a trial court's grant of a motion to dismiss, all well-pleaded allegations in the complaint are taken as true. (*Wheeler v. Caterpillar Tractor Co.* (1985), 108 Ill. 2d 502, 505; *Elliott v. L R S L Enterprises, Inc.* (1992), 226 Ill. App. 3d 724, 727.) Dismissal of a complaint, or portion thereof, should not be granted under section 2—619 unless it clearly appears that no set of facts can be proved which would entitle plaintiff to recover. (*Elliott*, 226 Ill. App. 3d at 727-28.) This court is concerned only with questions presented by the pleadings. Any allegations which are merely conclusions, unsupported by allegations of specific facts, are not admitted. *Elliott*, 226 Ill. App. 3d at 728.

■ As a preliminary matter, we note that the purpose of the Tort Immunity Act is to protect local public entities and public employees from liability arising from the operation of government. (Ill. Rev. Stat. 1991, ch. 85, par. 1—101.1 (a); *West v. Kirkham* (1992), 147 Ill. 2d 1, 11.) By statutory definition, counties and municipal corporations are local public entities. (Ill. Rev. Stat. 1991, ch. 85, par. 1—206.) Therefore, PBC, as a municipal corporation (see Ill. Rev. Stat. 1991, ch. 85, par. 1044), and County are afforded the immunities and defenses provided by the Tort Immunity Act (see Ill. Rev. Stat. 1991, ch. 85, pars. 1—101.1(a), (b)).

On appeal, plaintiff argues that (1) the trial court's ruling is inconsistent with established rules of statutory construction; (2) the legislature intended section 3—108(a) to apply only to completed property; (3) section 3—108(a) cannot be interpreted so as to provide immunity to a governmental entity for supervision thus negating liability under the Structural Work Act; (4) had the legislature intended to confer immunity upon public entities engaged in construction, it would have specifically provided for it in the Tort Immunity Act; and (5) the allegations of the complaint fall under an ultrahazardous activity exception to the Tort Immunity Act. PBC responds that (1) plaintiff's interpretation contradicts the clear language of the statute and ignores other provisions of the Tort Immunity Act; and (2) had the legislature intended to create an exception to the Tort Immunity Act for claims brought under the Structural Work Act, it would have done so. County responds that (1) if the legislature intended section 3—108(a) to apply only to completed property it would have been expressly provided for in the statute; (2) plaintiff's argument fails to consider the statute as a whole; (3) had the legislature intended to create an exception to the Tort Immunity Act for Structural Work Act claims, it

would have expressly done so; and (4) notwithstanding the applicability of section 3—108(a), section 3—103(a) confers immunity from Structural Work Act claims.

A statute will be construed by an appellate court independent of the trial court's determination. (*Magna Bank v. Comer* (1992), 232 Ill. App. 3d 300, 304.) The fundamental tenet of statutory construction, to which all other canons and rules subordinate, is to give effect to the true intent and meaning of the legislature. (*Hernon v. E.W. Corrigan Construction Co.* (1992), 149 Ill. 2d 190, 194.) A court's initial inquiry is directed to the language of the statute itself. (*Hernon*, 149 Ill. 2d at 194.) A court, however, should also consider the purpose of the statutory enactment. (*Harvel v. City of Johnston City* (1992), 146 Ill. 2d 277, 283; *In re Houlihan* (1992), 231 Ill. App. 3d 677, 680.) Furthermore, the consequences resulting from various constructions must be taken into consideration, and a court should select a construction which leads to a logical result and avoid one which the legislature could not have contemplated. (*Klier v. Siegel* (1990), 200 Ill. App. 3d 121, 124.) Moreover, the courts presume that the General Assembly, in passing legislation, did not intend absurdity, inconvenience or injustice. *Hernon*, 149 Ill. 2d at 195.

In support of their argument, defendants rely in large measure upon *Eiben v. E.J. Cattani & Sons, Inc.* (1991), 217 Ill. App. 3d 609. In *Eiben*, an employee of a private contractor was injured after falling from a support tower used in conjunction with a pile driver. The employee brought suit against the crane operator, Bureau County and the county highway department alleging violations of the Structural Work Act. The Appellate Court, Third District, affirmed the trial court's dismissal of plaintiff's Structural Work Act count against Bureau County. The court held that plaintiff's allegations that the county "had charge of" the project by virtue of maintaining supervision or control over the project raised a bar to tort liability under section 3—108(a) of the Tort Immunity Act. *Eiben*, 217 Ill. App. 3d at 612-13.

We note that although the plaintiffs in *Eiben* raised the issue of the applicability of section 3—108(a) with respect to Structural Work Act claims, the third district did not squarely address this threshold question. Rather, it focused on the more narrow question of whether the substance of plaintiff's complaint alleged supervision or control over the project. Implicit in that analysis, therefore, is the assumption that section 3—108(a) bars a Structural Work Act claim. Because of the absence of contrary authority, the third district's decision in *Eiben* was binding upon the circuit court in the present case. For reasons

we will now set forth, however, we choose not to follow the holding in *Eiben*.

In 1959, the supreme court abolished common-law sovereign immunity in Illinois. (*Molitor v. Kaneland Community Unit District No. 302* (1959), 18 Ill. 2d 11, 21.) In 1965, the legislature responded by enacting the Tort Immunity Act. It provides that local governmental units are liable in tort but limits this liability with an extensive list of immunities based upon specific governmental functions. (*Burdinie v. Village of Glendale Heights* (1990), 139 Ill. 2d 501, 506.) Sections 3—108(a) and (b) of the Tort Immunity Act provide:

"(a) Except as otherwise provided by this Act and subject to subdivision (b) neither a local public entity nor a public employee is liable for an injury caused by a failure to supervise an activity on or the use of any public property.

(b) Where a local public entity or public employee designates a part of public property to be used for purposes of swimming and establishes and designates by notice posted upon the premises the hours for such use, the entity or public employee is liable only for an injury proximately caused by its failure to provide supervision during the said hours posted." Ill. Rev. Stat. 1991, ch. 85, pars. 3—108(a), (b).

A survey of the cases that have addressed section 3—108(a) immunity reveals that the type of activity involved typically arises in either a scholastic or recreational setting. See, *e.g, Castenada v. Community School District Unit No. 200* (1991), 226 Ill. App. 3d 514 (students on public property); *Burdinie v. Village of Glendale Heights* (1990), 139 Ill. 2d 501 (adult swimming class); *Koh v. Village Greens of Woodridge* (1987), 158 Ill. App. 3d 226 (supervision and regulation of public golf course during tournament); *Ramos v. City of Countryside* (1985), 137 Ill. App. 3d 1028 (supervision of summer recreation program on public property); *Edmonson v. Chicago Board of Education* (1978), 62 Ill. App. 3d 211 (supervision of activities in school lunchroom); *Woodman v. Litchfield Community School District No. 12* (1968), 102 Ill. App. 2d 330 (supervision of student in classroom where one student injured another).

With the exception of *Eiben*, our research discloses no case in Illinois that has addressed the interplay between section 3—108(a) of the Tort Immunity Act and claims brought against a local public entity under the Structural Work Act. A substantial body of case law exists, however, which implicitly recognizes that local public entities can be held liable for claims brought under the Structural Work Act arising out of construction-related injuries. See, *e.g., Harvel v. City of John-*

*ston City* (1992), 146 Ill. 2d 277 (spouse of injured party can maintain cause of action for loss of consortium against defendant city); *Tenenbaum v. City of Chicago* (1975), 60 Ill. 2d 363 (failure to barricade opening from which materials were hoisted could, if violations of Structural Work Act are proved willful, subject city to liability for injuries sustained by worker); *Lafata v. Village of Lisle* (1989), 185 Ill. App. 3d 203, *aff'd* (1990), 137 Ill. 2d 347 (reversal of summary judgment in favor of village with regard to Structural Work Act claim); *Keyser v. Metropolitan Sanitary District* (1987), 165 Ill. App. 3d 696 (appellate court affirmed Structural Work Act verdict against public entity); *McCarty v. City of Marshall* (1977), 51 Ill. App. 3d 842 (Structural Work Act applicable against city where worker sustained injuries from fall after receiving electrical shock).

■ Although the plain language of section 3—108(a) could arguably include the failure to supervise construction activities, we do not believe that the legislature intended to immunize local public entities from liability for construction-related injuries brought under the Structural Work Act. If we were to adopt such a broad reading of section 3—108(a), the term "activity" would engender activities clearly beyond what have been typically and historically regarded as governmental functions. In short, the exception (*i.e.*, immunity) would swallow the rule. Moreover, the existence of case law predating the 1986 amendment of the Tort Immunity Act and recognizing the right of an injured worker to maintain a cause of action against a local public entity based upon violations of the Structural Work Act suggests that had the legislature intended to confer immunity, it would have expressly provided for it in the statutory amendments. Because the Tort Immunity Act is in derogation of the common law, it must be strictly construed against a local public entity. *Clark v. City of Chicago* (1980), 88 Ill. App. 3d 760, 764.

In further support of our conclusion, we note that under the common law municipalities were afforded immunity from liability for the performance of discretionary acts. (*Greeson v. Mackinaw Township* (1990), 207 Ill. App. 3d 193, 200.) They were not afforded immunity, however, for the performance of ministerial tasks, that is, those amounting to the performance of a task in accordance with an order. (*Greeson*, 207 Ill. App. 3d at 200.) Discretionary acts are those acts which require personal deliberation, decision and judgment. *Greeson*, 207 Ill. App. 3d at 200.

As our supreme court has stated in a somewhat different factual context:

"It is well settled, that municipal corporations have certain powers which are discretionary or judicial in character, and certain powers which are ministerial. *** Municipal corporations will not be held liable in damages for the manner in which they exercise, in good faith, their discretionary powers of a public, or legislative, or *quasi* judicial character. But they are liable to actions for damages when their duties cease to be judicial in their nature, and become ministerial. [Citations.] Official action is judicial where it is the result of judgment or discretion. Official duty is ministerial, when it is absolute, certain and imperative, involving merely the execution of a set task, and when the law which imposes it, prescribes and defines the time, mode and occasion of its performance with such certainty, that nothing remains for judgment or discretion. [Citation.] A corporation acts judicially, or exercises discretion, when it selects and adopts a plan in the making of public improvements, such as constructing sewers or drains; but as soon as it *begins to carry out that plan*, it acts ministerially, and is bound to see that the work is done in a reasonably safe and skillful manner." (Emphasis added.) *City of Chicago v. Seben* (1897), 165 Ill. 371, 377-78.

Although the statement above was made prior to the enactment of the Tort Immunity Act, it is apparent from a review of the statute as a whole that the legislature contemplated the discretionary/ministerial distinction when it drafted the provisions of the Act. For example, section 3—103(a) confers immunity from liability for injuries caused by the adoption of a plan or design of construction. This section clearly recognizes the exercise of discretionary authority as a basis for immunity which is consistent with the supreme court's pronouncement in *Seben*. Additionally, immunity from liability for discretionary acts is implicit in other provisions. (See, *e.g.*, Ill. Rev. Stat. 1991, ch. 85, par. 3—104 ("failure to initially provide"); Ill. Rev. Stat. 1991, ch. 85, par. 3—105(b) ("failure of a local public entity *** to upgrade any existing street"); Ill. Rev. Stat. 1991, ch. 85, par. 4—102 ("failure to establish a police department"); Ill. Rev. Stat. 1991, ch. 85, par. 5—101 ("failure to establish a fire department").) The common thread linking these provisions is that a local public entity is immunized from liability in the exercise of its discretion while acting in a governmental capacity. Moreover, the statute reveals no provision that expressly confers immunity from liability arising from the performance of wholly ministerial tasks. It logically follows, in light of the implicit retention of the discretionary/ministerial distinction in the

existing statute, that, had the legislature intended to confer immunity for ministerial tasks, it would have been expressly provided for at the time of enactment or in later amendments.

The discretionary/ministerial distinction, as applied to the Tort Immunity Act, continues to be recognized. (See, *e.g., Parsons v. Carbondale Township* (1991), 217 Ill. App. 3d 637 (failure of township supervisor to comply with requirements of State manual delineating specifications for construction and placement of road signs may subject public entity to liability for negligent failure to perform a ministerial task); *Greeson v. Mackinaw Township* (1990), 207 Ill. App. 3d 193 (city immune from liability because employee was acting in discretionary capacity).) Although the cases that have applied the distinction differ factually from the case at bar, we find it applicable to the present case.

Based upon the foregoing, it is our conclusion that where a local public entity engages in the supervision or oversight of a municipal construction project in accordance with a previously agreed-upon plan or design of construction, that entity is no longer engaged in the exercise of a discretionary function and, as such, is not afforded immunity from liability under section 3—108(a) of the Tort Immunity Act. We recognize that inherent in the performance of virtually any ministerial task, such as the oversight of a construction project, is an element of discretion. It is our opinion, however, that an act in this context is best characterized by viewing it as a whole rather than by focusing upon its component elements. Otherwise, it would be possible to recharacterize almost any ministerial task as discretionary, thus providing for an overly broad application of immunity protection. We do not believe that the legislature intended such a broad interpretation of the Tort Immunity Act.

Additionally, County separately contends that section 3—103(a) provides it with immunity for "the adoption of a plan or design *or* a construction of or improvement to public property where the design has been approved in advance." (Emphasis added.) Plaintiff responds that the immunity intended by the legislature extends only to injuries that result from a negligent plan or design of construction and that such injuries are not the type contemplated by the Structural Work Act.

Section 3—103(a) of the Tort Immunity Act provides:

"A local public entity is not liable under this Article for an injury caused by the adoption of a plan or design of a construction of, or an improvement to public property where the plan or design has been approved in advance of the construction or

improvement by the legislative body of such entity or by some other body or employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved. The local public entity is liable, however, if after the execution of such plan or design it appears from its use that it has created a condition that it is not reasonably safe." Ill. Rev. Stat. 1991, ch. 85, par. 3—103(a).

■ Considering the plain language of the statute, we note that County misquotes the statute in its brief and imports this misunderstanding into its argument. The statute does not confer immunity from liability for the adoption of a plan or design *or* construction; rather, immunity exists for the adoption or design *of* a construction (see Ill. Rev. Stat. 1991, ch. 85, par. 3—103(a)). Therefore, County's argument is in derogation of the plain language of the statute.

Moreover, after comparing the statute with plaintiff's complaint, we conclude that section 3—103(a) immunity is inapplicable to the issues of this case. Counts I and III of plaintiff's complaint do not allege the failure to adopt a design or plan; rather, they are premised upon violations of the Structural Work Act resulting from defendant's having charge of the project. Therefore, because the allegations do not pertain to injuries resulting from the adoption of a plan or design, section 3—103(a) immunity is inapplicable. See *Anderson v. Sutter* (1983), 119 Ill. App. 3d 1070, 1078.

Finally, it is unnecessary, in light of our disposition concerning the applicability of section 3—108(a) to the facts of this case, to consider plaintiff's contention that the facts alleged in his complaint bring this case within what he perceives as an "ultrahazardous activity" exception to the Tort Immunity Act, nor is it necessary to consider whether section 3—108(a) applies only to completed property. Thus, we offer no opinion as to those contentions.

For the foregoing reasons, we reverse the order of the circuit court of McHenry County dismissing with prejudice counts I and III of plaintiff's second amended complaint and remand this cause for further proceedings.

Reversed and remanded.

DUNN and BOWMAN, JJ., concur.