660 N.E.2d 89 (1995)
277 Ill.App.3d 357
213 Ill.Dec. 832
Luis CORRAL, as father and next friend of Daniel Corral, a minor, Plaintiff-Appellant,
v.
CHICAGO PARK DISTRICT, a municipal corporation, Defendant-Appellee.
No. 1-94-3061.
Appellate Court of Illinois, First District, Sixth Division.
December 22, 1995.
*90 David L. Cwik, Chicago, for Appellant.
Donald J. Suriano, Senior Counsel, Chicago Park District, Chicago, for Appellee.
Justice RAKOWSKI delivered the opinion of the court:
While visiting Lincoln Park Zoo (Zoo) with his classmates, Daniel Corral tripped on a cobblestone sidewalk and was injured. The Zoo is located in Lincoln Park and is operated by the defendant, Chicago Park District. Plaintiff filed a two-count complaint (negligence and wilful conduct) against the defendant. The trial court granted defendant's motion to dismiss the negligence count pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 1992)), holding that the Chicago Park District was immune from suit in simple negligence. Following a trial, judgment was entered in favor of defendant on the wilful conduct count.
Plaintiff's appeal only addresses the dismissal of the negligence count and frames the issue as whether the Chicago Park District, as operator of the Lincoln Park Zoo, is immune from suit in simple negligence for injuries occurring on the Zoo's property. For the following reasons, we affirm.
Section 3-106 of the Local Governmental and Governmental Employees Tort Immunity Act (the Tort Immunity Act) provides:
"Neither a local public entity nor a public employee is liable for an injury where the liability is based on the existence of a condition of any public property intended or permitted to be used for recreational purposes, including but not limited to parks, playgrounds, open areas, buildings or other enclosed recreational facilities, unless such local entity or public employee is guilty of willful and wanton conduct proximately causing such injury." (745 ILCS 10/3-106 (West 1992).)
Section 1-206 of the Tort Immunity Act provides:
"`Local public entity' includes a county, township, municipality, municipal corporation, school district, school board, educational service region, regional board of school trustees, community college district, community college board, forest preserve district, park district, fire protection district, sanitary district, museum district, and all other local governmental bodies. `Local public entity' also includes library systems and any intergovernmental agency or similar entity formed pursuant to the Constitution of the State of Illinois or the intergovernmental Cooperation Act as well as any not-for-profit corporation organized *91 for the purpose of conducting public business. It does not include the State or any office, officer, department, division, bureau, board, commission, university or similar agency of the State." 745 ILCS 10/1-206 (West 1992).
Plaintiff first contends that the Tort Immunity Act does not apply to the Zoo because it is not a recreational facility within the meaning of the statute. According to plaintiff, the Tort Immunity Act applies only to "open areas" used for "sportive activities." Plaintiff also notes that a zoo is not included in the definition of "local public entity." For the reasons which follow, we find plaintiff's contention to be without merit.
Plaintiff tripped and fell while walking on a sidewalk adjacent to the outdoor seal exhibit. It is of no import whether this area can be characterized as an open area. The express language of section 3-106 includes: "parks, playgrounds, open areas, buildings or other enclosed recreational facilities." (Emphasis added.) (745 ILCS 10/3-106.) Although the Zoo is a separate section of Lincoln Park, the Zoo nonetheless is located entirely within Lincoln Park and is operated by the Chicago Park District. As a result, plaintiff's contention is belied by the unambiguous language of section 3-106 and section 1-206 of the Tort Immunity Act.
In support of his argument that the Tort Immunity Act applies only to sportive activities, plaintiff cites John v. City of Macomb (1992), 232 Ill.App.3d 877, 173 Ill.Dec. 375, 596 N.E.2d 1254, which in part states:
"In our opinion, the legislative intent of the Act is to immunize governmental entities from liability for simple negligence in areas where public activities of a sportive nature, as opposed to stage entertainment, are permitted." John, 232 Ill.App.3d at 880, 173 Ill.Dec. 375, 596 N.E.2d 1254.
First we note that no citation to authority is given in support of the aforementioned quote. Nor is there any language in the statute which would support such a statement. The unambiguous language of the Tort Immunity Act grants immunity where the property is used for recreational purposes. We find no language which would support a sportive or active activity limitation and see no reason to engraft one.
Immunity depends upon the character of the property in question (Bubb v. Springfield School District 186 (1995), 167 Ill.2d 372, 212 Ill.Dec. 542, 546, 657 N.E.2d 887, 891.) When deciding whether section 3-106 is applicable, courts must consider the nature of the property as a whole. (Bubb, at 379, 212 Ill.Dec. 542, 657 N.E.2d 887, citing Kirnbauer v. Cook County Forest Preserve District (1991), 215 Ill.App.3d 1013, 159 Ill. Dec. 499, 576 N.E.2d 168.) It is undisputed that the Chicago Park District is a local public entity and that the sidewalk on which plaintiff fell was public property within the meaning of the Tort Immunity Act. (745 ILCS 5/1-206, 3-101.) It is also uncontroverted that the sidewalk was located within Lincoln Park.
In Spencer v. City of Chicago (1989), 192 Ill.App.3d 150, 139 Ill.Dec. 216, 548 N.E.2d 601, we held that a lagoon owned by the Chicago Park District was recreational property covered under section 3-106 of the Tort Immunity Act. There were signs around the perimeter of the lagoon which prohibited fishing and swimming. In response to plaintiff's argument that the lagoon was not recreational property, the court held:
"A park is `an inclosed pleasure-ground in or near a city, set apart for the recreation of the public.' (Black's Law Dictionary 1005 (5th ed. 1979).) * * *
The term `recreation area' or `recreation purpose' is not limited to active recreation. The court in Zebulon Enterprises, Inc. v. County of Du Page (1986), 146 Ill.App.3d 515, 518-19, [100 Ill.Dec. 191, 194] 469 [496] N.E.2d 1256, 1259, found the term `recreation' to include both active and passive activities." (Spencer, 192 Ill.App.3d at 155, 139 Ill.Dec. 216, 548 N.E.2d 601.)
See also Kirnbauer v. Cook County Forest Preserve District (1991), 215 Ill.App.3d 1013, 1022-23, 159 Ill.Dec. 499, 576 N.E.2d 168 (plaintiff injured by steel cable barricade erected on property adjacent to roadway and within forest preserve); Annen v. Village of McNabb (1990), 192 Ill.App.3d 711, 712-13, 139 Ill.Dec. 669, 548 N.E.2d 1383 (plaintiff *92 injured in restroom facility located within park); Ramos v. Waukegan Community Unit School District No. 60 (1989), 188 Ill. App.3d 1031, 1036-37, 136 Ill.Dec. 527, 544 N.E.2d 1302 (plaintiff injured on sidewalk adjacent to school playground).
Accordingly, we decline to follow the Third District opinion of John v. City of Macomb. To do so would require us to equate recreation with sportive or active activity, a conclusion not supported by the Tort Immunity Act or by better reasoned case law.
Next, plaintiff contends that the Tort Immunity Act does not apply because the Chicago Park District's operation of the Zoo is a proprietary function rather than a governmental function. The contention, however, begs the question. Plaintiff assumes (as have several reported decisions) that this distinction would determine whether or not the Tort Immunity Act applies. For the reasons which follow, we hold that the Tort Immunity Act does not retain the common law distinction between proprietary and governmental functions.
Prior to 1959, the common law doctrine of sovereign immunity granted municipal and quasi-municipal corporations partial immunity from tort liability. Under the doctrine, immunity was premised on whether the municipality's tortious acts were committed while engaged in a proprietary or governmental activity. (See Merrill v. City of Wheaton (1942), 379 Ill. 504, 41 N.E.2d 508 (liability based on whether the demolition of a stairway was a governmental function); Gebhardt v. Village of La Grange Park (1933), 354 Ill. 234, 188 N.E. 372 (liability of municipality turned on whether maintenance of park swimming pool was a governmental or proprietary function); Roumbos v. City of Chicago (1928), 332 Ill. 70, 163 N.E. 361 (application of respondent superior depends on whether government or private function of the city involved).) Thus, if the court determined that the municipality was engaging in a proprietary, private, or corporate function, there was no immunity from liability.
However, the common law of sovereign immunity was abolished by the landmark decision of Molitor v. Kaneland Community Unit District No. 302 (1959), 18 Ill.2d 11, 163 N.E.2d 89. "Since the abolishment of sovereign immunity, our courts have held that `[g]overnmental units are liable in tort on the same basis as private tortfeasors unless a valid statute dealing with tort immunity imposes conditions upon that liability.'" Barnett v. Zion Park District (1994), 267 Ill. App.3d 283, 288, 204 Ill.Dec. 791, 642 N.E.2d 492, appeal granted (1995), 159 Ill.2d 563, 207 Ill.Dec. 513, 647 N.E.2d 1006, quoting La-Monte v. City of Belleville (1976), 41 Ill. App.3d 697, 705, 355 N.E.2d 70.
Between 1959 and 1965, the Illinois General Assembly enacted a series of bills both granting and denying immunity. "The result of this extensive legislative activity was a confused pattern embracing both full acceptance and full rejection of the principles laid down in Molitor, depending on the type of local government involved." D. Baum, Tort Liability of Local Governments and their Employees: An Introduction to the Illinois Immunity Act, Winter 1966 U. of I. Law Forum 981, 983.
In 1965, the General Assembly enacted the Tort Immunity Act which adopted the principle that local governmental units are liable in tort but limited this liability with an extensive list of immunities based on specific governmental functions. Under the 1970 Illinois Constitution, the General Assembly possesses exclusive authority to define the scope of sovereign immunity. (Burdinie v. Village of Glendale Heights (1990), 139 Ill.2d 501, 152 Ill.Dec. 121, 565 N.E.2d 654.) The Burdinie court noted that:
"[B]ecause of the clear language of article XIII of the Illinois Constitution, which makes the General Assembly the ultimate authority in determining whether a unit of local government is immune from tort liability, we hold that the language of the Tort Immunity Act should control in any analysis of whether plaintiff's complaint states a cause of action." Burdinie, 139 Ill.2d at 510-11, 152 Ill.Dec. 121, 565 N.E.2d 654.
This court's primary role in defining tort immunities of local governments is to determine and give effect to the intent of the General Assembly which is evidenced by the *93 language used. (Burke v. 12 Rothschild's Liquor Mart, Inc. (1992), 148 Ill.2d 429, 441, 170 Ill.Dec. 633, 593 N.E.2d 522.) Where the language of an enactment is clear and unambiguous, a court is not at liberty to depart from the plain language and meaning of the statute by reading into it exceptions, limitations, or conditions that the legislature did not express. Kraft, Inc. v. Edgar (1990), 138 Ill.2d 178, 189, 149 Ill.Dec. 286, 561 N.E.2d 656.
The Tort Immunity Act clearly identifies which elements of the common law the legislature intended to include in it. Under the doctrine of sovereign immunity, distinctions exist between proprietary versus governmental functions and discretionary versus ministerial acts. Although section 2-201 of the Tort Immunity Act explicitly grants immunity for injuries arising out of discretionary acts, there is no language which supports a proprietary versus governmental distinction. The inclusion of one implies the exclusion of all else.
To be sure, several post-Tort Immunity Act cases[*] still discuss a propriety versus governmental distinction. In Brown v. Chicago Park District (1991), 218 Ill.App.3d 612, 161 Ill.Dec. 353, 578 N.E.2d 999, in discussing whether plaintiff was owed a duty, the court distinguished "functions which are governmental in character from those which are not." (Brown, 218 Ill.App.3d at 616, 161 Ill.Dec. 353, 578 N.E.2d 999.) Brown discussed the Tort Immunity Act in the context of whether it imposes a duty. The decisive utterance of the case is no duty. The issue of immunity is never reached. Moreover, in discussing governmental function, the opinion cites to Gebhardt v. Village of La Grange Park (1933), 354 Ill. 234, 188 N.E. 372, a pre-Tort Immunity Act decision. In Davis v. Chicago Housing Authority (1990), 136 Ill.2d 296, 300, 144 Ill.Dec. 224, 555 N.E.2d 343, the court referred to the governmental/proprietary distinction in the context of the Housing Cooperation Law (Ill.Rev.Stat.1985, ch. 67½, par. 28 et seq.). The court, like Brown above, cited to Gebhardt. In Eck v. McHenry County Public Building Comm'n (1992), 237 Ill.App.3d 755, 178 Ill.Dec. 586, 604 N.E.2d 1109, in dicta, the court stated that immunity provided under section 3-108 of the Tort Immunity Act did not apply to every activity if it is "beyond what have been typically and historically regarded as governmental functions." (Eck, 237 Ill.App.3d at 761, 178 Ill.Dec. 586, 604 N.E.2d 1109.) Eck addressed section 3-108(a) of the Tort Immunity Act and claims brought against a local public entity under the Structural Work Act rather than whether the Tort Immunity Act contained the governmental/proprietary distinction. In Fryman v. JMK/Skewer, Inc. (1985), 137 Ill.App.3d 611, 92 Ill.Dec. 178, 484 N.E.2d 909, the court held that while the county, through its health department, had a statutory duty to inspect the Skewer Inn, the county was engaged in a governmental function which was discretionary and therefore was not actionable. (Fryman, 137 Ill.App.3d at 616, 92 Ill.Dec. 178, 484 N.E.2d 909.) The court further stated that "[a]n immunity is a bar to liability when all elements of a cause of action have been established" and that the plaintiffs did not allege facts giving rise to a duty running from the county to them. (Fryman, 137 Ill.App.3d at 619, 92 Ill.Dec. 178, 484 N.E.2d 909.) "Duty is an essential element of this cause of action. Therefore, immunity never comes into play." (Emphasis added.) (Fryman, 137 Ill.App.3d at 619, 92 Ill.Dec. 178, 484 N.E.2d 909.) (See also Lakeside Condominium "C" Association v. Frediani Developers, Inc. (1985), 135 Ill. App.3d 972, 90 Ill.Dec. 686, 482 N.E.2d 665 (issue of immunity never reached where plaintiff failed to establish a common law duty).) In Comastro v. Village of Rosemont (1984), 122 Ill.App.3d 405, 78 Ill.Dec. 32, 461 N.E.2d 616, the court found that the village as a municipal corporation was engaged in the nongovernmental function of operating a public arena and was therefore held to the same standard imposed on private parties to exercise a high degree of care toward its invitees to protect them against the likelihood of danger from reasonably foreseeable attacks by third persons. The issue of immunity pursuant to the Tort Immunity Act was not addressed. None of the aforementioned *94 cases specifically holds that the Tort Immunity Act incorporates the governmental/proprietary function test.
On the other hand, several cases have expressly held that the Tort Immunity Act does not retain the common law governmental versus proprietary distinction.
In List v. O'Connor (1960), 19 Ill.2d 337, 167 N.E.2d 188, our supreme court held:
"Likewise, the decision in the Molitor case, in discussing the doctrine of sovereign immunity, dismisses as immaterial any distinction between governmental or proprietary functions, observing that efforts to classify municipal functions have resulted in incongruities and that attempts to fit particular conduct into one or the other of these categories have met with frequent adverse comments." (List, 19 Ill.2d at 340, 167 N.E.2d 188.)
In Deren v. City of Carbondale (1973), 13 Ill.App.3d 473, 300 N.E.2d 590, referring to the Tort Immunity Act, the court stated that:
"This statute was enacted in 1965 following a number of statutes and court decisions which had made basic changes in the law governing governmental subdivisions and municipal corporations. It is not necessary here to detail the history of these changes which have been frequently discussed. Suffice it to say that the historical distinction between proprietary and governmental functions has been generally abolished as the determining factor in liability of a local governmental entity." (Deren, 13 Ill.App.3d at 475, 300 N.E.2d 590.)
Following Deren, in Smith v. Godin (1978), 61 Ill.App.3d 480, 18 Ill.Dec. 754, 378 N.E.2d 218, the court stated:
"This statute, enacted in 1965, effectively abolishes the historical distinction between proprietary and governmental functions as the determining factor in establishing liability where persons claim injury at the hands of a local governmental entity." (Smith, 61 Ill.App.3d at 481, 18 Ill.Dec. 754, 378 N.E.2d 218.)
More recently, in Blankenship v. Peoria Park District (1994), 269 Ill.App.3d 416, 207 Ill.Dec. 325, 647 N.E.2d 287, the court refused to follow Brown v. Chicago Park District (utilizing government versus propriety function to find park district did not owe duty to drowning victim because governmental function), stating:
"We decline to follow Brown because we believe that its decision, as well as that in Gebhardt, rests upon the discarded doctrine of sovereign immunity." (Blankenship, 269 Ill.App.3d at 421, 207 Ill.Dec. 325, 378 N.E.2d 218.)
See also Barnett v. Zion Park District (1994), 267 Ill.App.3d 283, 204 Ill.Dec. 791, 642 N.E.2d 492, appeal granted (1995), 159 Ill.2d 563, 207 Ill.Dec. 513, 647 N.E.2d 1006.
In sum, we do not find any language in the Tort Immunity Act which would support a proprietary/governmental function distinction and that those cases which have specifically addressed the issue have refused to engraft such a distinction.
Based upon the foregoing, the judgment of the circuit court is affirmed.
Affirmed.
EGAN and ZWICK, JJ., concur.
NOTES
[*] The cases cited are given by way of example. We do not attempt to catalog or analyze all those post-Tort Immunity Act cases which discuss a proprietary/governmental distinction.