707 N.E.2d 285 (1999)
303 Ill. App.3d 198
236 Ill.Dec. 440
Glorya KAYSER, Plaintiff-Appellant,
v.
The VILLAGE OF WARREN, Defendant-Appellee (Stagecoach Trail Association, Defendant).
No. 2-98-0413.
Appellate Court of Illinois, Second District.
February 16, 1999.
*286 Steven A. Cox, Snow, Hunter, Whiton & Fishburn, Ltd., Freeport, for Glorya Kayser.
Thomas J. Potter, Ludens, Potter & Birch, Morrison, for Village of Warren.
Lloyd R. McCumber, Picha & Salisbury, Rockford, for Stagecoach Trail Association.
Justice RAPP delivered the opinion of the court:
Plaintiff, Glorya Kayser (Kayser), brought a negligence action against the Village of Warren (Village), an Illinois municipal corporation and the owner of the Warren community building, after she was injured exiting the Warren community building. The circuit court of Jo Daviess County dismissed Kayser's complaint pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/1-101 et seq. (West 1996)), ruling that Kayser's claim was barred by the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/3-106 (West 1996)). We affirm.
Kayser's complaint alleged that on June 22, 1997, Kayser was selling T-shirts in a booth during the annual Stagecoach Trail Festival. After she delivered T-shirts to storage inside the Warren community building, Kayser was injured exiting the building. Kayser fell as she attempted to maneuver around a chair propped inside the exit door.
The Village moved to dismiss Kayser's complaint, asserting that it was immune from liability for negligence under section 3-106 of the Tort Immunity Act, which provides as follows:
"Neither a local public entity nor a public employee is liable for an injury where the liability is based on the existence of a condition of any public property intended or permitted to be used for recreational purposes, including but not limited to parks, playgrounds, open areas, buildings or other enclosed recreational facilities, unless such local entity or public employee is guilty of willful and wanton conduct proximately causing such injury." 745 ILCS 10/3-106 (West 1996).
It is undisputed that the Village is a local public entity and that the Warren community building is public property. See 745 ILCS 10/1-206, 3-101 (West 1996).
In support of its position that the Warren community building is public property intended or permitted to be used for recreational purposes, the Village filed the affidavit of Warren village attorney Michael A. *287 Toepfer, which stated that functions held at the Warren community building included "family picnics, club meetings, receptions, bake sales, book sales, Chamber of Commerce meetings, preschool Christmas concerts, and long range planning committee group supper and meetings."
Kayser opposed the Villages's motion, arguing that the Tort Immunity Act did not preclude her suit because the Warren community building could not be characterized as a recreational facility within the meaning of the Act.
The trial court agreed with the Village and found that the Warren community building was recreational property under section 3-106. Thus, applying the immunity granted under the statute, the trial court dismissed Kayser's suit.
On appeal, the sole issue is whether the Warren community building is "public property intended or permitted to be used for recreational purposes" as contemplated by section 3-106 of the Tort Immunity Act. Kayser argues that the Warren community building is not within the purview of section 3-106 because the activities held at the building are not sufficiently "sportive" or "active." If the Warren community building falls within the purview of section 3-106, however, the Village is immune from liability because Kayser's complaint contained no allegation of willful and wanton conduct. See 745 ILCS 10/3-106 (West 1996).
In general, under section 3-102 of the Tort Immunity Act, municipalities have a duty to exercise ordinary care to maintain their property in a reasonably safe condition. 745 ILCS 10/3-102 (West 1996). Section 3-106, however, provides public entities with an affirmative defense against simple negligence claims arising from conditions present on any public property intended or permitted to be used for recreational purposes, regardless of the primary purpose of the property. Bubb v. Springfield School District 186, 167 Ill.2d 372, 378, 212 Ill.Dec. 542, 657 N.E.2d 887 (1995). This section was enacted with the purpose of encouraging the development and maintenance of public parks, playgrounds, and similar recreation areas. Lewis v. Jasper County Community Unit School District No. 1, 258 Ill.App.3d 419, 422, 196 Ill.Dec. 383, 629 N.E.2d 1227 (1994).
As the supreme court recognized, public property may have more than one intended use. Bubb, 167 Ill.2d at 383, 212 Ill.Dec. 542, 657 N.E.2d 887. Thus, the character of the property as a whole determines whether section 3-106 immunity applies. Sylvester v. Chicago Park District, 179 Ill.2d 500, 509, 228 Ill.Dec. 698, 689 N.E.2d 1119 (1997). In addition, section 3-106 may apply to facilities and structures as well. Sylvester, 179 Ill.2d at 508, 228 Ill.Dec. 698, 689 N.E.2d 1119. These facilities or structures need not be recreational in character; section 3-106 will apply if the usefulness of public property intended or permitted to be used for recreational purposes is increased. Sylvester, 179 Ill.2d at 508, 228 Ill.Dec. 698, 689 N.E.2d 1119; see Annen v. Village of McNabb, 192 Ill.App.3d 711, 139 Ill.Dec. 669, 548 N.E.2d 1383 (1990) (holding section 3-106 applies to restroom on park grounds). Section 3-106 does not apply to every public area where recreation might occur; rather, courts consider whether the property was used for recreation in the past or whether recreation was encouraged there. Bubb, 167 Ill.2d at 381-82, 212 Ill.Dec. 542, 657 N.E.2d 887.
Courts have found various types of property immune under section 3-106 as recreational areas. These properties include school playgrounds (see Lewis, 258 Ill.App.3d 419, 196 Ill.Dec. 383, 629 N.E.2d 1227); a bike path within a city park (Goodwin v. Carbondale Park District, 268 Ill.App.3d 489, 205 Ill.Dec. 956, 644 N.E.2d 512 (1994)); a drainage ditch located in a park (Conoway v. Hanover Park Park District, 277 Ill.App.3d 896, 214 Ill.Dec. 674, 661 N.E.2d 528 (1996)); a parking lot adjacent to a football stadium (Sylvester, 179 Ill.2d 500, 228 Ill.Dec. 698, 689 N.E.2d 1119); a public convention center (Diamond v. Springfield Metropolitan Exposition Auditorium Authority, 44 F.3d 599 (7th Cir.1995)); and, very recently, Chicago's Navy Pier, a property of over 50 acres of parks, promenades, gardens, shops, restaurants, and entertainment attractions (Wallace v. Metropolitan Pier & Exposition Authority, *288 302 Ill.App.3d 573, 236 Ill.Dec. 295, 707 N.E.2d 140).
Kayser argues that the Warren community building is not recreational because it is not used for "sportive" or "active" purposes. Kayser relies upon John v. City of Macomb, 232 Ill.App.3d 877, 173 Ill.Dec. 375, 596 N.E.2d 1254 (1992), which stated that "the legislative intent of the Act is to immunize governmental entities from liability for simple negligence in areas where public activities of a sportive nature * * * are permitted." John, 232 Ill.App.3d at 880, 173 Ill. Dec. 375, 596 N.E.2d 1254. Accordingly, Kayser contends that the section 3-106 immunity does not apply here.
Recreation is defined as "`refreshment of the strength and spirits after toil: DIVERSION, PLAY.'" Ozuk v. River Grove Board of Education, 281 Ill.App.3d 239, 243, 217 Ill.Dec. 18, 666 N.E.2d 687 (1996), quoting Webster's Third New International Dictionary 1899 (1986). Play "`suggests an opposition to work; it implies activity, often strenuous, but emphasizes the absence of any aim other than amusement, diversion, or enjoyment.'" (Emphasis omitted.) Ozuk, 281 Ill. App.3d at 243-44, 217 Ill.Dec. 18, 666 N.E.2d 687, quoting Webster's Third New International Dictionary 1737 (1986).
In Corral v. Chicago Park District, 277 Ill.App.3d 357, 213 Ill.Dec. 832, 660 N.E.2d 89 (1995), the court found that Lincoln Park Zoo was property intended for recreational use although attending a zoo is passive activity. The court held that section 3-106 does not apply just to sportive activities and stated, "We find no language which would support a sportive or active activity limitation and see no reason to engraft one." Corral, 277 Ill.App.3d at 360, 213 Ill.Dec. 832, 660 N.E.2d 89. Subsequently, the supreme court endorsed the Corral language that passive activity is recreational by concluding "spectators of sporting events are engaged in recreation" (Sylvester, 179 Ill.2d at 510, 228 Ill. Dec. 698, 689 N.E.2d 1119), and the first district explicitly held that the term "recreational purposes" includes passive activity (Wallace, 302 Ill.App.3d at 577, 236 Ill.Dec. 295, 707 N.E.2d 140).
Therefore, the term "recreational purpose" is not limited to "sportive" or "active" recreation (Spencer v. City of Chicago, 192 Ill.App.3d 150, 155, 139 Ill.Dec. 216, 548 N.E.2d 601 (1989)), and property intended or permitted for passive activities involving relaxation and pleasure also falls within the scope of protection afforded by section 3-106. Wallace, 302 Ill.App.3d at 577, 236 Ill.Dec. 295, 707 N.E.2d 140. Although we concur with the premise that passive activity may be recreational, whether the passive activity in this case was recreational and whether the Village intended or permitted the Warren community building to be used for these purposes remain to be addressed.
Two cases are dispositive of the present case, the seventh circuit case Diamond, 44 F.3d 599, and Wallace, 302 Ill.App.3d 573, 236 Ill.Dec. 295, 707 N.E.2d 140. In Diamond, the plaintiff was injured when she tripped in an underground tunnel on her way to attend a career-related conference at the Prairie Capital Convention Center. The convention center, a multipurpose facility, was used for meetings, shows, expositions, rodeos, boxing matches, wrestling events, basketball games and tournaments, karate tournaments, and other public events. The court held that the convention center was public property intended or permitted to be used for recreational purposes under section 3-106 of the Tort Immunity Act. Diamond, 44 F.3d at 604. Subsequently, the supreme court endorsed the seventh circuit's reasoning. See Bubb, 167 Ill.2d at 381, 212 Ill.Dec. 542, 657 N.E.2d 887.
In Wallace, the plaintiff was injured on Chicago's Navy Pier, which consists of over 50 acres of parks, promenades, gardens, shops, restaurants, and entertainment attractions. Wallace, 302 Ill.App.3d at 575, 236 Ill.Dec. 295, 707 N.E.2d 140. According to the plaintiff, section 3-106 did not apply because Navy Pier is commercial, not recreational, property. Relying on Diamond, the first district disagreed and found that Navy Pier, a multipurpose facility, was "certainly property intended or permitted for recreational use." Wallace, 302 Ill.App.3d at 578, 236 *289 Ill.Dec. 295, 707 N.E.2d 140. The court found that recreational activity has occurred and was encouraged at the pier though a "myriad of activities and attractions, such as carnival rides, movies, theatrical and musical performances and cruises that are designed for the public's enjoyment." Wallace, 302 Ill.App.3d at 578, 236 Ill.Dec. 295, 707 N.E.2d 140. The court held that the fact that the pier has both recreational and nonrecreational purposes does not defeat the applicability of section 3-106. Wallace, 302 Ill.App.3d at 578, 236 Ill.Dec. 295, 707 N.E.2d 140.
In the present case, the only evidence of the use of the Warren community building, the Toepfer affidavit, establishes that the building is used for family picnics, club meetings, receptions, bake sales, book sales, Chamber of Commerce meetings, preschool Christmas concerts, and long-range-planning committee group suppers and meetings. Similar to Navy Pier and the Prairie Capital Convention Center, the Warren community building is a multipurpose facility used for recreational and nonrecreational activities.
Here, the public benefits from the use of a public building in much the same way as it benefits from a park or a playground. Many of the Warren community building's activities, such as preschool Christmas concerts, receptions, and family picnics, are permitted inside the building solely for the public's enjoyment, diversion, and amusement; these are activities analogous to Navy Pier's carnival rides and theatrical and musical performances or the Prairie Capital Convention Center's expositions, rodeos, and boxing matches. In other words, they are activities the Warren community building permitted for the public's recreation. We hold, therefore, that the Warren community building is public property intended or permitted to be used for recreational purposes consistent with section 3-106 of the Tort Immunity Act.
Furthermore, the legislative history of section 3-106 supports this interpretation of the statute. Prior to its amendment in 1986, section 3-106 applied only to public property "intended or permitted to be used as a park, playground or open area for recreational purposes." Ill.Rev.Stat.1985, ch. 85, para. 3-106. In 1986, the legislature amended the statute to apply to "any public property intended or permitted to be used for recreational purposes." 745 ILCS 10/3-106 (West 1996). Amended section 3-106 still provided immunity for parks, playgrounds, and open areas but added "buildings or other enclosed recreational facilities" to the illustrative list of immunized public properties. This amendment evidences the legislature's intent to broaden the scope of immunity provided by the Tort Immunity Act beyond parks and playgrounds to encompass other properties where recreational uses are intended or permitted. See Bonfield v. Jordan, 202 Ill. App.3d 638, 148 Ill.Dec. 110, 560 N.E.2d 412 (1990).
For the foregoing reasons, we hold that the Village is entitled to immunity under section 3-106 of the Tort Immunity Act. Accordingly, the decision of the circuit court of Jo Daviess County is affirmed.
Affirmed.
INGLIS and GEIGER, JJ., concur.