No. 2-09-0482       Filed:  4-29-10

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| KARRON CALLAGHAN, | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 08--L--40 |
| | ) | |
| THE VILLAGE OF CLARENDON HILLS | ) | |
| and CLARENDON HILLS PARK DISTRICT, | ) | Honorable |
| | ) | Richard M. Stock, |
| Defendants-Appellees. | ) | Judge, Presiding. |

PRESIDING JUSTICE ZENOFF delivered the opinion of the court:

Plaintiff, Karron Callaghan, appeals from the trial court's dismissal of her complaint against defendants, the Village of Clarendon Hills (Village) and Clarendon Hills Park District (Park District).  The four-count complaint stemmed from plaintiff's fall on a public sidewalk and included allegations of negligence and willful and wanton conduct by each defendant.  On defendants' motions brought pursuant to section 2--619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2--619(a)(9) (West 2008)), the trial court dismissed the negligence counts.  On defendants' motions brought under section 2--615 of the Code (735 ILCS 5/2--615 (West 2008)), it dismissed the counts alleging willful and wanton conduct.  For the following reasons, we affirm.

BACKGROUND

Plaintiff alleged that on March 6, 2007, she was injured when she slipped and fell on ice and snow while walking on a public sidewalk.  The sidewalk was located at approximately 451 Park

Avenue in Clarendon Hills, near a public park within a residential area. Plaintiff fell in front of a fenced-in water tower.

On January 14, 2008, plaintiff filed a one-count complaint alleging negligence by the Village. She later amended the complaint to add a count of negligence against the Park District. On June 4, 2008, plaintiff filed a second amended, four-count complaint. Count I alleged negligence by the Village, and count II alleged willful and wanton conduct by the Village. Counts III and IV were brought against the Park District, alleging negligence and willful and wanton conduct, respectively. Generally, plaintiff alleged that she slipped and fell "upon an unnatural accumulation of ice and snow, which was caused by a nearby improper placement of an excessive amount of snow which then led to an unnatural and unreasonably dangerous accumulation of ice and snow" on the sidewalk.

The Village and the Park District each filed a motion to dismiss pursuant to section 2--619.1 of the Code (735 ILCS 5/2--619.1 (West 2008) (providing for combined motions seeking relief under sections 2--615 and 2--619)). With respect to the negligence counts, in the section 2--619(a)(9) portions of their motions, defendants maintained that they were immune from suit in negligence pursuant to section 3--106 of the Local Governmental and Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/3--106 (West 2008)), because the sidewalk on which plaintiff fell was recreational property. In the section 2--615 portions of their motions, defendants argued that plaintiff failed to state a cause of action for willful and wanton conduct because she made conclusory allegations unsupported by facts. Additionally, the Park District argued under section 2--615 that plaintiff failed to state a cause of action for negligence because she did not include sufficient factual

allegations of its notice of the condition of the sidewalk, as required by section 3--102(a) of the Act (745 ILCS 10/3--102(a) (West 2008)).

On August 11, 2008, the trial court heard argument on defendants' motions to dismiss the second amended complaint. The second amended complaint and the motions included photographs of the area where plaintiff fell, the intergovernmental agreement (agreement) defendants entered into in October 2001 to jointly develop a storm water detention area into Park Avenue Park (park), the site development plan for the park, and an affidavit from Mr. John Hays, the director of public works for the Village. The trial court entered an order indicating that it would issue its ruling on the motions to dismiss on September 24, 2008.

Before the trial court ruled on the motions, on August 25, 2008, plaintiff filed a supplemental memo to clarify evidence. In it, plaintiff stated that the site development plan attached to the Village's motion to dismiss was illegible and that, because defendants had provided a computerized version of the plan on August 14, plaintiff was able to enlarge it and discover that the portion of the sidewalk on which she fell was part of lot 15. According to plaintiff, since the agreement's legal description of the park was "lot[s] 7 through 14, inclusive," defendants could not claim immunity under section 3--106, because plaintiff was not injured on recreational property. In response, the Village filed a supplemental memo in support of its motion to dismiss, including a supplemental affidavit of Hays alleging that the sidewalk on lot 15 was part of the development of the park. The Park District filed a surreply in support of its motion to dismiss, based in part on Hays' supplemental affidavit.

On September 24, 2008, the trial court dismissed with prejudice counts I and III (negligence against each defendant), pursuant to section 3--106 of the Act. The trial court dismissed without

prejudice counts II and IV (willful and wanton conduct against each defendant) for failure to state a cause of action and granted plaintiff leave to file an amended complaint to replead the willful-and-wanton-conduct counts.

Plaintiff filed a motion to reconsider, which the trial court denied on February 19, 2009. Plaintiff also filed her third amended complaint.[1] The Village and the Park District each filed a section 2--615 motion to dismiss the willful-and-wanton-conduct claims, which the trial court dismissed, with prejudice, on April 8, 2009. The trial court also entered a final order dismissing the entire case with prejudice. Plaintiff timely appealed.

ANALYSIS

Plaintiff argues that the trial court erred in (1) finding that section 3--106 of the Act barred her negligence claims in counts I and III, and (2) concluding that she failed to state a cause of action for willful and wanton conduct in counts II and IV. We address each in turn.

Negligence Counts--Applicability of Section 3--106

Section 2--619(a)(9) of the Code provides for involuntary dismissal of a claim, based on "affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2--619(a)(9) (West 2008). A section 2--619 motion to dismiss accepts as true all well-pleaded facts and raises questions of law. Nettleton v. Stogsdill, 387 Ill. App. 3d 743, 759 (2008). Our review is de novo. Nettleton, 387 Ill. App. 3d at 759. We must determine whether a genuine issue of material fact

---

[1]Plaintiff filed her motion to reconsider and the third amended complaint on the same date. In the third amended complaint, she preserved counts I and III (negligence) from the second amended complaint and repleaded counts II and IV alleging willful and wanton conduct.

-4-

should have precluded dismissal or, if not, whether dismissal was appropriate as a matter of law. Van Meter v. Darien Park District, 207 Ill. 2d 359, 377-78 (2003).

The affirmative matter asserted by defendants here is immunity under section 3--106 of the Act. "Immunity from suit under the Tort Immunity Act is an 'affirmative matter' properly raised under section 2--619(a)(9)." Van Meter, 207 Ill. 2d at 377. The affirmative matter must be apparent on the face of the complaint or else the defendant must support the motion with affidavits. Van Meter, 207 Ill. 2d at 377; Schlicher v. Board of Fire & Police Commissioners, 363 Ill. App. 3d 869, 877 (2006). The defendant bears the burden of proof of the affirmative matter. Springfield Heating & Air Conditioning, Inc. v. 3947-55 King Drive At Oakwood, LLC, 387 Ill. App. 3d 906, 909 (2009). If the defendant satisfies its initial burden of proof, the burden shifts to the plaintiff to show that "the defense is unfounded or requires the resolution of an essential element of material fact before it is proven." Kedzie & 103rd Currency Exchange, Inc. v. Hodge, 156 Ill. 2d 112, 116 (1993). In order to refute evidentiary facts contained in the defendant's supporting affidavits, the plaintiff must provide a counteraffidavit. Kedzie & 103rd Currency Exchange, Inc., 156 Ill. 2d at 116. If the plaintiff fails to provide a counteraffidavit to challenge the facts alleged in the defendant's supporting affidavits, the facts of the defendant's affidavits are deemed admitted. Zedella v. Gibson, 165 Ill. 2d 181, 185 (1995).

A local public entity had a duty at common law, now codified in section 3--102 of the Act, "to exercise ordinary care to maintain [its] property in a reasonably safe condition." Bubb v. Springfield School District 186, 167 Ill. 2d 372, 377 (1995); see 745 ILCS 10/3--102 (West 2008). Section 3--106 of the Act, however, provides immunity for local public entities under the following circumstances:

"Neither a local public entity nor a public employee is liable for an injury where the liability is based on the existence of a condition of any public property intended or permitted to be used for recreational purposes, including but not limited to parks, playgrounds, open areas, buildings or other enclosed recreational facilities, unless such local entity or public employee is guilty of willful and wanton conduct proximately causing such injury." (Emphasis added.)  745 ILCS 10/3--106 (West 2008).

The purposes of section 3--106 are to "prevent the diversion of public funds from their intended purpose to the payment of damage claims" (Bubb, 167 Ill. 2d at 378) and to "encourag[e] the development and maintenance of public parks, playgrounds, and similar recreation areas" (Kayser v. Village of Warren, 303 Ill. App. 3d 198, 200 (1999)).  Because the Act "is in derogation of the common law, it must be strictly construed against the public entities involved."  Van Meter, 207 Ill. 2d at 380.

Here, the parties agree that defendants are local public entities and that the sidewalk on which plaintiff fell was public property.  There is also no dispute that the adjacent park was recreational property.  Plaintiff's contention is that the sidewalk where she fell was owned by the Village, not the Park District, and was not used for recreational purposes.  The question before us then is whether that portion of the sidewalk was "intended or permitted to be used for recreational purposes" within the meaning of section 3--106.

It is well settled that immunity under section 3--106 depends upon the character of the property as a whole and not on the plaintiff's use of the property at the time of injury.  Adamczyk v. Township High School District 214, 324 Ill. App. 3d 920, 924 (2001).  Recreational use need not be the primary purpose of the property.  Bubb, 167 Ill. 2d at 384.  Determination of the character of

the property involves a case-by-case evaluation. Adamczyk, 324 Ill. App. 3d at 924. The court is to consider "whether the property has been used for recreation in the past or whether recreation has been encouraged there." Bubb, 167 Ill. 2d at 382. Public property "where recreation might occur" is not immune, and recreational use of property might be so incidental that section 3--106 does not apply, or else the duty of ordinary care codified in section 3--102 would be eviscerated. Bubb, 167 Ill. 2d at 382. However, "section 3--106 may apply to facilities or structures that increase the usefulness of public property intended or permitted to be used for recreational purposes. These facilities or structures need not be recreational in character for section 3--106 to apply." Sylvester v. Chicago Park District, 179 Ill. 2d 500, 508 (1997).

In Sylvester, the plaintiff was injured when she tripped over a concrete parking abutment (car stop) on a walkway adjacent to Soldier Field's south parking lot while walking to a Chicago Bears football game. Sylvester, 179 Ill. 2d at 502. The plaintiff filed a negligence suit against the Chicago Park District, which moved to dismiss based on section 3--106. Sylvester, 179 Ill. 2d at 501. The trial court denied the motion, reasoning that the parking lot itself was not a recreational facility. Sylvester, 179 Ill. 2d at 504. Following a bench trial, the trial court found in favor of the plaintiff and the appellate court affirmed. Sylvester, 179 Ill. 2d at 504, 505.

Our supreme court reversed, holding that section 3--106 operated to bar the plaintiff's claim and that the trial court erred by "narrowly focusing on only whether the parking lot by itself was being used for recreational purposes." Sylvester, 179 Ill. 2d at 509-10. Our supreme court reasoned:

"The evidence shows that plaintiff's fall occurred on the walkway of a Park District parking lot serving Soldier Field. The Park District intended for and permitted football fans to park in the lots adjacent to Soldier Field and use the walkways to gain access to the stadium. ***

***

In addition, section 3--106 may apply to facilities or structures that increase the usefulness of public property intended or permitted to be used for recreational purposes. These facilities or structures need not be recreational in character for section 3--106 to apply. [Citation.] Although the walkways and parking lots adjacent to Soldier Field may not be primarily recreational, Soldier Field itself is certainly recreational and these facilities increase its usefulness. Taken as a whole, we find that Soldier Field and its adjacent walkways and parking lots are intended or permitted to be used for recreational purposes." Sylvester, 179 Ill. 2d at 508.

The court concluded that "an examination of the property as a whole indicates that the parking lot in which plaintiff fell was an integral part of the Soldier Field recreational facility." Sylvester, 179 Ill. 2d at 509.

Plaintiff argues that the walkway in Sylvester is distinguishable because it was owned by the defendant park district, whereas the lot 15 sidewalk here was owned by the Village and was not an integral part of the park since it was not included in the agreement between defendants. Defendants do not contend that the sidewalk itself was recreational property. Rather, they maintain that the sidewalk provided access to the park and, as in Sylvester, thereby increased the usefulness of the park, which was undisputedly recreational property.

Initially we note that the evidence supports defendants' contention. According to Hays' affidavit, "The improvements [to develop the storm water detention area into a park] included, but were not limited to, the installation of sidewalks, including the sidewalk at issue in this matter which is located in Park Avenue Park." In his supplemental affidavit, Hays averred that prior to the

creation of the park, the Village had intended for pedestrian travel only on the north side of Park Avenue, where it had previously installed a sidewalk. The sidewalk on the south side of Park Avenue, along with areas for public parking, was installed as part of the improvements made when the area was developed into the park. Hays acknowledged that lot 15 was not included in the agreement. However, he stated that the Park District did not distinguish lot 15 in its maintenance responsibilities, as its employees cut the grass around the fence surrounding the water tower and maintained the sidewalk on lots 7 through 14 and on lot 15.

The facts alleged by Hays in his affidavits were unrefuted by any counteraffidavit from plaintiff; therefore, we accept them as true. See Zedella, 165 Ill. 2d at 185. The facts surrounding both the installation and the maintenance of the sidewalk as a whole lead to the conclusion that it was intended to provide access to the park.

Given these facts, the present case is similar to Sylvester. Both involve walkways adjacent to recreational facilities. Plaintiff asserts that in Sylvester, the defendant admitted that it "owned, operated, possessed, and maintained" the walkway where the plaintiff was injured (Sylvester, 179 Ill. 2d at 502), whereas, here, lot 15 was not owned by the Park District. Plaintiff offers no support for the proposition that legal ownership of property is dispositive on the applicability of section 3--106 or that the defendant's ownership in Sylvester was outcome determinative. Although a park district's ownership of property would likely weigh in favor of finding that the property was intended for recreational use, it is not necessary. Section 3--106 provides immunity to a local governmental entity based not on the public property's ownership but on the character of the property. Moreover, in the instant case, none of the park property was owned by the Park District, but rather it was leased to the Park District by the Village. Yet plaintiff does not dispute the recreational character of the

park itself based on its being owned by the Village. The evidence shows that the lot 15 sidewalk was maintained by the Park District, like the walkway in Sylvester, and was included in the development of the park, evincing an intent that it be used to access the park. Accordingly, because the sidewalk increased the usefulness of the park by providing access to it, under section 3--106 the sidewalk was intended or permitted to be used for recreational purposes and defendants enjoy immunity from plaintiff's negligence claims. See Sylvester, 179 Ill. 2d at 508.

Having said that, we do not agree with plaintiff's contention that application of Sylvester to the instant case effectively immunizes every public sidewalk that ultimately leads to a park, thus producing an absurd result not intended by the legislature. In support of her argument, plaintiff relies on Batson v. Pinckneyville Elementary School District No. 50, 294 Ill. App. 3d 832 (1998). There, the appellate court reversed the trial court's grant of summary judgment for the defendant and remanded for further proceedings because a genuine issue of material fact existed as to the character of the property at issue. Batson, 294 Ill. App. 3d at 839. The property was a sidewalk outside of a junior high school gymnasium, where the plaintiff fell after attending a craft fair inside. Batson, 294 Ill. App. 3d at 833. The Batson court considered Sylvester, reasoning:

"We recognize that the Sylvester opinion noted that surrounding walkways and parking lots increased the usefulness of the Soldier Field stadium. However, that increased usefulness alone was not outcome determinative, as logic will not allow it. Immunity based solely upon a consideration of the 'increased usefulness' factor would be potentially unbounded, causing absurd results. Any walkway, even a considerable distance from recreational property, could increase the usefulness of that property if the walkway is

travelled to ultimately enter the area. Any judicial attempt to restrict this potentially unlimited immunity would require arbitrary line-drawing.

Such arbitrary decisions were certainly not the legislature's intention. The plain language of section 3--106 contemplates a determination of immunity for bounded public property. For example, it is intended to afford immunity to a playground, including nonrecreational structures within it. [Citation.] It was not intended to grant immunity outside recreational property." (Emphases in original.) Batson, 294 Ill. App. 3d at 836.

Sylvester does not require that the property at issue be within the boundaries of the recreational property. In Sylvester, the property at issue was a walkway adjacent to the stadium, not within the confines of the stadium. Moreover, the scope of section 3--106 was not unlimited in Sylvester. The walkway was "bounded," and the scope of section 3--106 limited, by the walkway's location, adjacent to the stadium and not "a considerable distance" from the recreational property.

Similarly, the sidewalk here was immediately adjacent to the park. It was not down the street or around the corner. Moreover, applying Sylvester here is consistent with the legislative intent to encourage the development and maintenance of recreational property, as that is precisely what defendants achieved through the execution of their agreement. Further, it would not have made much sense, or have been very practical, for defendants to create in the storm water detention area a park without pedestrian access. We need not address whether an overly broad reading of Sylvester has the potential to create unbounded areas of immunity. We merely hold that, as applied to the facts of this case, Sylvester does not produce an absurd result.

Plaintiff further argues that the Park District's voluntary assumption of the maintenance of lot 15 did not transform lot 15 into recreational property, because the Park District was not obligated to maintain lot 15 under the agreement. Whether the Park District's maintenance of the lot 15 sidewalk was voluntary or obligatory is not relevant to defendants' intent regarding the sidewalk. That the Park District did maintain the entire sidewalk, for whatever reason, is indicative of its view that the sidewalk was intended for recreational purposes and was within its purview.

Plaintiff also asserts that the lot 15 sidewalk was not recreational because it was not included in the legal description of the park. We note that our conclusion that section 3--106 applies here is not contingent upon the sidewalk's being located within the park. Instead, we conclude that section 3--106 applies because the sidewalk provides access to the park, thereby increasing its usefulness. Additionally, plaintiff provides, and our research reveals, no authority in support of the proposition that the legal description of property is somehow dispositive of whether it was intended or permitted to be used for recreational purposes under section 3--106. Thus, plaintiff has forfeited this argument. See First National Bank of LaGrange v. Lowrey, 375 Ill. App. 3d 181, 208 (2007) (pursuant to Supreme Court Rule 341(h)(7) (210 Ill. 2d R. 341(h)(7)), lack of argument or citation to authority results in waiver).

Although plaintiff filed no counteraffidavits in the trial court, she argued in her motion to reconsider and urges this court to conclude that the two Hays affidavits contradict each other. Plaintiff contends that Hays' statement in the original affidavit that the sidewalk was located within the park is in direct conflict with his statement in the supplemental affidavit that lot 15 was not included in the agreement. She argues that Hays "abandoned" his original position that the sidewalk was located in the park.

The two affidavits are not inconsistent. The later one was given when Hays had more information, specifically that plaintiff contended she was injured on lot 15. From the original affidavit, we infer that Hays viewed the sidewalk generally as being within the park. That Hays no longer averred in the later affidavit that the sidewalk portion at issue, on lot 15, was inside the park implies that he recognized a possible legal distinction of that portion of the sidewalk. However, as discussed above, that distinction does not compel a different result since we conclude that section 3--106 applies based on Sylvester's increased-usefulness factor, not on any recreational use of the sidewalk itself or on its legal description.

Plaintiff next contends that, because the photographs depict a residential area, with homes and residential parking signs, the conclusion that the sidewalk was intended or permitted for recreational use was erroneous. She points to a sign on the water tower fence stating, "STOP, Restricted Area, get permission before entering," as further evidence that the lot 15 portion of the sidewalk was not intended for recreational use. We are unconvinced. Plaintiff cites no authority in support of the proposition that recreational property cannot exist in a residential neighborhood. Indeed, common experience dictates that it often does. Furthermore, that the fenced-in water tower itself was not intended for recreational purposes does not diminish the recreational character of the park or the fact that the adjacent sidewalk, including the portion on lot 15, promoted the park's usefulness by providing convenient access.

Plaintiff additionally argues that the cost estimate in the site plan supports her position that the sidewalk on lot 15 was not intended for recreational purposes. Specifically, she points to an estimate for 1,600 square feet of sidewalk. Plaintiff states that she measured the sidewalk located on lots 7 through 14 and that it totaled almost exactly that amount. Therefore, according to plaintiff,

the additional 500 square feet of sidewalk located on lot 15 could not have been intended as part of the development of the park. Plaintiff did not provide the trial court with any affidavits refuting the factual allegations of the Hays affidavits. Therefore, her alleged measurements were not properly before the trial court and we do not review them. See Kedzie & 103rd Currency Exchange, Inc., 156 Ill. 2d at 116 (a plaintiff must provide a counteraffidavit to refute evidentiary facts of a defendant's supporting affidavit).

Plaintiff further maintains that the sidewalk on lot 15 was "but one more logical extension of the sidewalk that completed a comprehensive system of sidewalk serving the entire Village," not just the park, and that any recreational use was incidental, making section 3--106 inapplicable. In support, she cites Rexroad v. City of Springfield, 207 Ill. 2d 33 (2003). In Rexroad, the plaintiff was a high school football team manager who fell in an excavation area in the school parking lot, located between the football field and the gymnasium. The plaintiff traversed the lot when he was returning to the field after retrieving a helmet from the gym, at the direction of a coach. Rexroad, 207 Ill. 2d at 37. Our supreme court held that the parking lot served several nonrecreational areas of the school and that section 3--106 did not apply because any recreational use of the parking lot was incidental. Rexroad, 207 Ill. 2d at 41, 43.

Rexroad is distinguishable from the instant case. Notwithstanding the fact that the lot 15 sidewalk here and the school parking lot in Rexroad were each located near both recreational and nonrecreational property, in the present case there is unrefuted evidence that the property at issue (the lot 15 sidewalk) was created for the purpose of providing access to recreational property (the park). Incidental pedestrian use by residents does not change this fact. This is unlike Rexroad, where the property at issue was not similarly dedicated to the recreational facility.

The additional cases cited by plaintiff are inapposite. In Larson v. City of Chicago, 142 Ill. App. 3d 81, 83 (1986), the plaintiff was injured while roller skating on a public sidewalk in a residential area and brought a negligence suit against the city. The appellate court rejected the defendant's argument that the applicability of section 3--106 should be determined by the plaintiff's use of the property at the time of injury and held that the defendant was not immune because a public sidewalk in a residential neighborhood was not akin to property such as a park or playground specifically intended for recreational purposes. Larson, 142 Ill. App. 3d at 86-87. Although the present case arguably involves a public sidewalk in a residential area, we have already determined that the sidewalk here was intended to increase the usefulness of the park and was therefore intended for recreational purposes, as in Sylvester.

Plaintiff also cites John v. City of Macomb, 232 Ill. App. 3d 877 (1992), asserting that the court held that the defendants were not entitled to section 3--106 immunity where the plaintiff was injured leaving a courthouse lawn where a festival was being held. Plaintiff mischaracterizes the court's holding. The court reversed the trial court's grant of summary judgment in favor of the defendant because a genuine issue of material fact existed as to the intended use of the property (John, 232 Ill. App. 3d at 880-81); it did not draw any conclusions about the applicability of section 3--106. The court held that permission to hold one festival did not necessarily indicate a recreational intent where the courthouse lawn generally was not used for recreational purposes. John, 232 Ill. App. 3d at 880. The court then added that, even assuming that the lawn itself was intended for recreational purposes, the evidence was not clear that the adjoining street where the plaintiff fell was within the perimeter of the recreational area. John, 232 Ill. App. 3d at 880. John has no applicability to the instant case because here there is evidence that the site of plaintiff's fall

was intended for recreational purposes--by providing access to, and increasing the usefulness of, the park.

Plaintiff finally relies on Johnson v. City of Chicago, 347 Ill. App. 3d 638, 640 (2004), where the plaintiff was injured on a sidewalk surrounding a library parking lot when the gate from the fence surrounding the lot fell on him. The court held that section 3--106 did not apply. The court rejected as tenuous the defendant's argument that the library was recreational property, the usefulness of which was increased by the adjacent parking lot, the usefulness of which was increased by the sidewalk surrounding the lot. Johnson, 347 Ill. App. 3d at 641. Here, the connection between the site of plaintiff's injury and the recreational property, the park, was not attenuated. The lot 15 sidewalk was created for the purpose of providing access to the park. While the library parking lot in Johnson was presumably created to increase the usefulness of the library, there was no evidence that the same was true for the sidewalk outside the fence surrounding the parking lot.

Overall, consideration of the recreational area in its entirety demonstrates that the lot 15 sidewalk increased the park's usefulness such that it falls within the scope of section 3--106. See Sylvester, 179 Ill. 2d at 508. Accordingly, we conclude that the trial court did not err in dismissing counts I and III based on defendants' immunity under section 3--106, because the evidence supports the conclusion that the sidewalk at issue was intended or permitted for recreational use.

Given our holding, we address plaintiff's alternative contention as to why section 3--106 does not apply. Plaintiff argues that the unnatural accumulation of snow and ice on the sidewalk was not a "condition" of the property within the meaning of section 3--106 because it was not an object affixed to the property. In support she cites Stein v. Chicago Park District, 323 Ill. App. 3d 574, 577 (2001), where the court held that a watering hose moved within Grant Park and returned to storage

at the end of the day was not a condition of the property within the meaning of section 3--106. Unlike the hose in Stein, although snow and ice are theoretically moveable, they are not of the same nature as something that would be moved around and stored. Thus, we are unpersuaded that Stein is factually on point.

Moreover, we agree with the Park District that, as plaintiff herself described the unnatural accumulation of ice and snow as an "unreasonably dangerous condition" (emphasis added), it is difficult to ascribe credibility to her argument that it was not a condition of the property. Nonetheless, given that plaintiff argues that her use of the term "condition" was colloquial, we also note that we agree with the Park District that reading Stein as holding that a condition under section 3--106 must be affixed to the property is unsupported by the language of section 3--106 and is in direct contravention of other case law.

Section 3--106 (745 ILCS 10/3--106 (West 2008)) states in relevant part, "Neither a local public entity nor a public employee is liable for an injury where the liability is based on the existence of a condition of any public property ***." The plain language of this section does not limit itself to any particular type of condition. Moreover, in construing a statute, we look at the statute as a whole because " 'words and phrases must be interpreted in light of other relevant provisions of the statute.' " Jain v. Johnson, No. 2--09--0080, slip op. at 4 (January 20, 2010), quoting J.S.A. v. M.H., 224 Ill. 2d 182, 197 (2007). Although the Act does not define "condition," section 3--101 defines "public property" to include both real and personal property. 745 ILCS 10/3--101 (West 2008). Given that the public property itself may be moveable personal property, it is inconsistent to interpret the "condition" as being affixed, or immoveable, and we will not read such a limitation into the statute. See Ultsch v. Illinois Municipal Retirement Fund, 226 Ill. 2d 169, 190 (2007) ("a court should not attempt to read a statute other than in the manner in which it was written"). We

also observe that courts have applied section 3--106 immunity to moveable conditions of public property. See <u>Sylvester</u>, 179 Ill. 2d 500 (moveable concrete car stop); <u>Kayser v. Village of Warren</u>, 303 Ill. App. 3d 198 (1999) (moveable chair propping exit door open); <u>Majewski v. Chicago Park District</u>, 177 Ill. App. 3d 337 (1988) (broken glass on football field). Consequently, we find no merit in plaintiff's argument.

In the alternative, plaintiff asserts that the snow and ice formed an unnatural accumulation forbidden by the agreement ("only natural accumulations of snow shall be permitted to persist in the Recreational Area") and therefore not a condition of the property. Plaintiff provides no argument or authority in support of the proposition that an unnatural accumulation cannot constitute a condition within the meaning of section 3--106. Thus, we decline to address it. See <u>Pederson v. Mi-Jack Products, Inc.</u>, 389 Ill. App. 3d 33, 44 (2009) (failure to provide argument in support of contention on appeal results in waiver).

Because we affirm the trial court's dismissal of plaintiff's negligence counts, we do not address the Park District's alternative argument that dismissal was proper as a matter of law because plaintiff did not allege sufficient facts that defendants had notice of the allegedly dangerous condition of the sidewalk.

Counts Alleging Willful and Wanton Conduct

We now turn to plaintiff's argument that the trial court erred in dismissing counts II and IV, sounding in willful and wanton conduct. She contends that she alleged sufficient facts to state a cause of action and that dismissal under section 2--615 was therefore erroneous.

A motion to dismiss pursuant to section 2--615 of the Code challenges only the complaint's legal sufficiency. In ruling on a section 2--615 motion to dismiss, a court should inquire whether the allegations of the complaint, when accepted as true and considered in the light most favorable

to the plaintiff, are sufficient to state a cause of action upon which relief may be granted. Turner v. Memorial Medical Center, 233 Ill. 2d 494, 499 (2009). Since Illinois is a fact-pleading jurisdiction, "a plaintiff must allege facts sufficient to bring his or her claim within the scope of the cause of action asserted." Turner, 233 Ill. 2d at 499. A plaintiff need not prove his case at the pleading stage; however, he must allege specific facts supporting each element of the cause of the action, and "the court will not admit conclusions of law and conclusory allegations not supported by specific facts." Visvardis v. Eric P. Ferleger, P.C., 375 Ill. App. 3d 719, 724 (2007). "The bare characterization of certain acts as wilful and wanton misconduct is not sufficient to withstand a motion to dismiss because such misconduct must be manifested by facts alleged in the complaint." Oravek v. Community School District 146, 264 Ill. App. 3d 895, 898 (1994). While the issue of whether conduct rises to the level of willful and wanton is usually a question for the trier of fact, the court may decide as a matter of law whether a plaintiff stated a cause of action. Oravek, 264 Ill. App. 3d at 897. Our review of the dismissal of a complaint under section 2--615 is de novo. Kelley v. Carbone, 361 Ill. App. 3d 477, 480 (2005).

Section 1--210 of the Act defines willful and wanton conduct as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1--210 (West 2008). "Inadvertence, incompetence, or unskillfulness does not constitute willful and wanton conduct." Floyd v. Rockford Park District, 355 Ill. App. 3d 695, 701 (2005). Rather, a plaintiff must plead facts supporting an inference that the defendant was informed of a dangerous condition on the recreational property, knew that others had been injured as a result of the dangerous condition, or

intentionally removed a safety device or feature from the recreational property. Floyd, 355 Ill. App. 3d at 701.

Here, in count II of the third amended complaint, plaintiff alleged the following against the Village.

"Defendant *** with a conscious indifference and reckless disregard for the safety of others willfully and wantonly committed one or more of the following acts or omissions:

(a) Knowingly created and caused an unreasonably dangerous condition to exist by improperly plowing, dumping, placing and otherwise storing an excessive amount of ice and snow directly on, near, above and/or around a known heavily traveled public sidewalk that was adjacent to a parking lot and public park in direct violation of the provisions of its own Intergovernmental Agreement;

(b) Authorized, approved, allowed and permitted an unnatural and excessive accumulation of ice and snow to exist on, near, above and/or around a known heavily traveled public sidewalk that was adjacent to a public park although Defendant knew that such accumulation was in direct violation of the Intergovernment Agreement, and was an unreasonably dangerous, unsafe and hazardous condition for persons lawfully upon the premises, including Plaintiff;

(c) Failed to properly order the removal of an excessive and unnatural accumulation of ice and snow that Defendant's agents and employees had caused, so as to prevent an unreasonably dangerous condition, in violation of its own Intergovernmental Agreement;

(d) Failed to timely remove the excessive and unnatural accumulation of ice and snow from and near a known heavily traveled public sidewalk that was adjacent to a parking lot

public park [sic] although Defendant knew that such failure was likely to cause injuries to persons, including Plaintiff, in violation of its own Intergovernmental Agreement;

(e) Failed to properly warn persons lawfully on its sidewalk of the existence of the unnatural accumulation of ice and snow although Defendant knew that such failure was likely to cause injury to persons including Plaintiff; and

(f) Was otherwise reckless in dumping, creating, causing, storing, permitting, or otherwise allowing an unreasonably dangerous and hazardous condition to exist on and near its sidewalks in direct violation of provisions within the Intergovernmental Agreement."

Plaintiff made essentially the same allegations against the Park District in count IV of the third-amended complaint, except that she also alleged that the Park District trespassed onto Village-owned property (lot 15) and voluntarily undertook a duty to maintain the sidewalk on lot 15, in violation of the agreement, and did so by plowing, dumping, placing, and otherwise storing an excessive amount of ice and snow directly above and around the sidewalk and its adjacent parking lot.

Plaintiff contends that she alleged facts supporting an inference of defendants' willful and wanton conduct, specifically that they actively created an unnatural "massive pile" of ice and snow, knowing that there was a high probability of harm to pedestrians in this heavily traveled, public area. We disagree with plaintiff's contention. The course of action undertaken by defendants was to remove snow. Plaintiff does not contend that they did so with an intent to deliberately harm her, or other pedestrians. Indeed, it is likely that defendants removed the snow for the safety and convenience of pedestrians such as plaintiff. Even assuming they did so in such a manner as to cause a hazardous condition on a heavily traveled sidewalk, evidencing carelessness or ordinary negligence, this conduct still does not give rise to an inference of utter indifference or conscious disregard for the safety of persons such as plaintiff.

The case of Ramos v. Waukegan Community Unit School District No. 60, 188 Ill. App. 3d 1031 (1989), is instructive. There, the court affirmed the trial court's dismissal of the plaintiff's willful-and-wanton-conduct counts. Ramos, 188 Ill. App. 3d at 1039. The plaintiff was a child jumping rope on a school sidewalk, at the direction of a teacher. Ramos, 188 Ill. App. 3d at 1033, 1037. The court concluded that allegations of a cracked and uneven sidewalk were insufficient to state a cause of action for willful and wanton conduct, because the plaintiff did not allege facts showing why the sidewalk was unreasonably dangerous. Ramos, 188 Ill. App. 3d at 1038. Similarly, plaintiff here provided no facts as to how the snow and ice pile was unreasonably dangerous.

Although plaintiff's negligence counts mentioned inadequate drainage and a slant on the sidewalk, the counts of willful and wanton conduct alleged neither those facts nor anything regarding melting or freezing or slippery conditions. It is not the job of the trial court or this court to read facts into plaintiff's allegations. Reading the allegations in the light most favorable to plaintiff, the facts alleged do not support an inference of willful and wanton conduct. Not only do they fail as in Ramos to allege why the sidewalk was unreasonably dangerous, but, as demonstrated by the discussion below, they also fail to allege how defendants' creation of the massive pile created the allegedly dangerous condition or how it evinced a conscious disregard for, or utter indifference to, the safety of pedestrians.

Ramos and the present case are in contrast to cases where courts have found willful and wanton conduct and we reject plaintiff's attempt to analogize them. In Muellman v. Chicago Park District, 233 Ill. App. 3d 1066, 1066-67 (1992), the plaintiff was injured when she stepped on an open pipe in Grant Park. The evidence showed that the defendant's employees were aware of the uncovered pipes, but painted bright orange only those pipes that had the potential to damage their

mowing equipment, not those upon which the general public could walk and be injured. Muellman, 233 Ill. App. 3d at 1069. In Benhart v. Rockford Park District, 218 Ill. App. 3d 554, 555 (1991), the plaintiff alleged she was injured by the defendant's intentional removal of a safety feature, nonskid strips, from a wave pool. In each of these cases, the court concluded that the defendant's conduct rose to the level of willful and wanton. Muellman, 233 Ill. App. 3d at 1069 (concluding that the trial court's entry of judgment in favor of the plaintiff was not against the manifest weight of the evidence); Benhart, 218 Ill. App. 3d at 559-60 (reversing the trial court's section 2--615 dismissal of the plaintiff's claim of willful and wanton conduct).

Viewing plaintiff's allegations in the light most favorable to her, they do not rise to the level of the conduct of the defendants in Muellman and Benhart. In Muellman, the defendant was aware of an existing dangerous condition and took steps to protect itself but consciously disregarded the safety of others by doing nothing to protect them. In Benhart, the defendant intentionally removed an existing safety device. In stark contrast, even assuming that defendants here were aware that the massive pile of snow would somehow create a dangerous condition of ice and snow on the sidewalk, defendants did not do anything to protect some persons and not others (Muellman), nor did defendants intentionally remove any safety device (Benhart). Accordingly, plaintiff failed to state of a cause of action for willful and wanton conduct and the trial court did not err in dismissing counts II and IV.

Neither do plaintiff's general allegations regarding violation of the agreement convince us otherwise. See Floyd, 355 Ill. App. 3d at 702 (a public entity's violation of its own internal rules is not proof of negligence, let alone willful and wanton conduct). Moreover, plaintiff's particular allegations directed solely at the Park District, regarding trespass and voluntary assumption of a duty

to maintain lot 15, are based on an alleged violation of the agreement as well, since it was the agreement that delineated the responsibilities between defendants.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

McLAREN and HUTCHINSON, JJ., concur.