# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Grundy v. Lincoln Park Zoo, 2011 IL App (1st) 102686**

---

| | |
|---|---|
| Appellate Court Caption | MARY GRUNDY, Plaintiffs-Appellees, v. LINCOLN PARK ZOO, LINCOLN PARK ZOOLOGICAL SOCIETY, LEVY RESTAURANTS, INC., and CHICAGO PARK DISTRICT, Defendants (Lincoln Park Zoological Society, Defendant-Appellant). |
| District & No. | First District, First Division<br>Docket No. 1-10-2686 |
| Filed | August 1, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action for the injuries plaintiff suffered when she tripped on the leg of a sign at a café located in a park district zoo, the appellate court answered four questions certified by the trial court by setting forth that a stationary but movable sign sitting in the same location in an outdoor food court constituted a condition of public property for purposes of section 3-106 of the Tort Immunity Act even though the sign was not "affixed to the property," the sign qualified as "public property" under section 3-106, but that answer does not address the issue of whether plaintiff's alleged injury was caused by a "condition" of the sign, and the qualification made by the appellate court in *Stein* that a "condition" of the property should be part of the property's mode or state of being is no longer in force. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-L-9205; the Hon. Jeffrey Lawrence, Judge, presiding. |

| | |
|---|---|
| Judgment | Certified questions answered; cause remanded. |
| Counsel on Appeal | Chicago Park District Law Department, of Chicago (Nelson A. Brown, Jr., of counsel), for appellant. |
| | No brief filed for appellee. |
| Panel | JUSTICE HOFFMAN delivered the judgment of the court, with opinion. Presiding Justice Hall and Justice Lampkin concurred in the judgment and opinion. |

## OPINION

¶ 1    Lincoln Park Zoological Society (Lincoln Park) filed this interlocutory appeal in connection with a suit filed by the plaintiff, Mary Grundy, against it, Lincoln Park Zoo (Zoo), Levy Restaurants, and the Chicago Park District. The plaintiff filed the suit to recover damages for injuries she allegedly sustained after tripping over the steel leg of a sign at a café located in the Zoo. In the course of the litigation, the circuit court certified four questions for our review pursuant to Illinois Supreme Court Rule 308 (eff. Feb. 26, 2010):

"1. Does a stationary but movable warning sign sitting in the same location in the outdoor food court of the Park Place Café in the Lincoln Park Zoo for the Zoo's summer season constitute 'a condition of any public property' under Section 3-106 of the Tort Immunity Act?

2. Is a stationary but movable warning sign sitting in the same location in the outdoor food court of the Park Place Café in the Lincoln Park Zoo for the Zoo's summer season 'affixed to the property' under *Stein v. Chicago Park District'*s interpretation of Section 3-106 of the Tort Immunity Act?

3. Is a stationary but movable warning sign sitting in the same location in the outdoor food court of the Park Place Café in the Lincoln Park Zoo for the Zoo's summer season 'public property' under section 3-101 of the Tort Immunity Act?

4. After the decision in *Callaghan v. Vill. Clarendon Hills*, is *Stein v. Chicago Park District*'s interpretation of Section 3-106 holding that 'public property' must be 'affixed to the property' so as to become part of its 'mode or state of being' still good law in Illinois?"

¶ 2    Although we initially declined to accept Lincoln Park's petition seeking our review of these questions, the supreme court has by supervisory order directed us to accept the appeal and answer the certified questions.

¶ 3        Before considering those questions, we observe that the plaintiff has not filed a responsive brief in this appeal. In that situation, our supreme court's decision in *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 345 N.E.2d 493 (1976), normally dictates that a court consider the merits of an appeal if the issues and record are susceptible to easy decision, but that a court otherwise decide the case in favor of the appellant if the appellant establishes a *prima facie* case for reversal. *Millineum Maintenance Management, Inc. v. County of Lake*, 384 Ill. App. 3d 638, 640-41, 894 N.E.2d 845 (2008) (superceded by statute on another point, as explained in *Our Savior Evangelical Lutheran Church v. Saville*, 397 Ill. App. 3d 1003, 1026, 922 N.E.2d 1143 (2009)). However, in an appeal considering certified questions, *Talandis* does not apply directly, because ruling in favor of the appellant who establishes a *prima facie* case would entail not ordering a case-specific outcome, but rather articulating a legal proposition that may or may not be correct. *Millineum Maintenance*, 384 Ill. App. 3d at 641. For that reason, and because the supreme court has directed us to do so, we address the certified questions on their merits regardless of their simplicity. Because we are presented solely with questions of law, our review is *de novo*. *Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 153, 879 N.E.2d 893 (2007).

¶ 4        We begin with the first certified question, which asks whether a movable sign that remains stationary for the summer season constitutes "a condition of any public property" under section 3-106 of the Local Governmental and Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/3-106 (West 2008)). This question prompts us to interpret section 3-106 of the Act. For a court interpreting a statute, the goal is to ascertain the legislature's intent in enacting the statute, and the best indicator of that intent is the statute's language, given its plain and ordinary meaning. *Johnston v. Weil*, 241 Ill. 2d 169, 175, 946 N.E.2d 329 (2011).

¶ 5        Section 3-106 of the Act, which carves an immunity from public entities' common-law duty to exercise ordinary care to maintain their property in a reasonably safe condition (see 745 ILCS 10/3-102 (West 2008); *Bubb v. Springfield School District 186*, 167 Ill. 2d 372, 377-78, 657 N.E.2d 887 (1995)), states as follows:

> "Neither a local public entity nor a public employee is liable for an injury where the liability is based on the existence of a condition of any public property intended or permitted to be used for recreational purposes, *** unless such local entity or public employee is guilty of willful and wanton conduct proximately causing such injury." 745 ILCS 10/3-106 (West 2008).

¶ 6        The first certified question focuses our attention on the meaning of the phrase "a condition of any public property." Although, as the circuit court observed and Lincoln Park observes, there is some case law interpreting that phrase, that case law is not entirely consistent.

¶ 7        Our supreme court first interpreted the phrase in *McCuen v. Peoria Park District*, 163 Ill. 2d 125, 643 N.E.2d 778 (1994). In *McCuen*, the plaintiff was allegedly injured in a fall from a hayrack ride after a park district employee negligently harnessed the mules pulling the hayrack. *McCuen*, 163 Ill. 2d at 126-27. In response to a certified question, the supreme court concluded that section 3-106 of the Act did not create immunity for the alleged

negligence. The supreme court reasoned as follows:

> "We do not believe that a driverless hayrack is a condition of public property within the meaning of section 3-106. Plaintiffs do not claim that the hayrack itself was dangerous, defective or negligently maintained, only that the mule team was not handled properly by the park district employee. The handling of the mule team does not relate to the condition of the hayrack itself. If otherwise safe property is misused so that it is no longer safe, but the property itself remains unchanged, any danger presented by the property is due to the misuse of the property and not to the condition of the property." *McCuen*, 163 Ill. 2d at 129.

¶ 8    While the supreme court in *McCuen* interpreted whether a deficiency constituted a "condition of public property" within the meaning of section 3-106, it provides only limited guidance on our first certified question. That first certified question asks not whether section 3-106 provides immunity for a condition of a movable sign, but whether the movable sign itself constitutes a condition of property. The question, then, asks us to determine what constitutes a condition of real property. The reasoning of *McCuen*, on the other hand, seems to have been limited to determining what constituted a condition of a hayrack, a piece of movable personal property.

¶ 9    In two later decisions interpreting other portions of section 3-106, the supreme court provided implicit guidance on the question we now face. In the first of the two decisions, *Sylvester v. Chicago Park District*, 179 Ill. 2d 500, 689 N.E.2d 1119 (1998), the plaintiff alleged that she was injured after she tripped on a concrete parking abutment that the Chicago Park District had negligently allowed to block a walkway adjacent to the exit for recreational facility parking lot. *Sylvester*, 179 Ill. 2d at 501. The parking abutment "weighed approximately 100 pounds and took several men or a forklift to move." *Sylvester*, 179 Ill. 2d at 505. The Park District argued that it was entitled to immunity pursuant to section 3-106, and the supreme court agreed. The court, however, focused its discussion on whether the walkway constituted "recreational property"; it assumed without discussion that the concrete parking abutment constituted "a condition of any public property." See *Sylvester*, 179 Ill. 2d 508-11 (discussing only the "recreational property" issue before determining that the park district was entitled to immunity).

¶ 10    In *Rexroad v. City of Springfield*, 207 Ill. 2d 33, 796 N.E.2d 1140 (2003), a later decision also considering whether property constituted "recreational property" under section 3-106, the supreme court distinguished *Sylvester* on the ground that the property at issue in *Sylvester* benefitted a purely recreational area, while the property in *Rexroad* benefitted nonrecreational areas as well. *Rexroad*, 207 Ill. 2d at 41. In so doing, the supreme court described *Sylvester* as involving a plaintiff who "tripped on a misplaced, concrete car stop." *Rexroad*, 207 Ill. 2d at 41.

¶ 11    These three decisions leave little doubt that the supreme court has understood, if not outright announced, that section 3-106 immunity extends to injuries caused by the condition of movable personal property, as in *McCuen*, or by movable items on real property, as in *Sylvester*. The supreme court's decision in *Rexroad*, in fact, goes so far as to explain that section 3-106 immunity applies in the case of "misplaced" movable items. Because section

-4-

3-106 provides immunity only for injuries caused by "a condition of public property," we must take from these supreme court decisions that it has concluded that misplaced movable items can constitute a condition of public property.

¶ 12    Although the supreme court's guidance on this point seems clear, appellate court decisions on the same subject have been less consistent, and at least three are in express conflict. In the first of those three decisions, *Stein v. Chicago Park District*, 323 Ill. App. 3d 574, 752 N.E.2d 631 (2001), the plaintiff was injured when she tripped over a watering hose on park property. When the defendant park district sought immunity under section 3-106, the First District of the Appellate Court concluded that the watering hose did not constitute a condition of the park property. The court reasoned that a "condition" should be "part of the property's 'mode or state of being' [citation], *i.e.*, part of the property itself," a description that did not apply to a hose that "was moved from place to place \*\*\*, then returned to storage at the end of the day." *Stein*, 323 Ill. App. 3d at 577. The court concluded by stating that the watering hose "was not affixed to the property in such a way as to become a part of the property itself." *Stein*, 323 Ill. App. 3d at 577.

¶ 13    Nine years later, the Second District issued *Callaghan v. Village of Clarendon Hills*, 401 Ill. App. 3d 287, 929 N.E.2d 61 (2010), a decision that criticized and departed from *Stein*'s reasoning. In *Callaghan*, the plaintiff alleged that she slipped and fell on an unnatural accumulation of ice and snow on a public sidewalk, and the defendant public entities countered that, because the sidewalk was located on recreational property, section 3-106 immunized them from any negligence action. *Callaghan*, 401 Ill. App. 3d at 288-89. After considering whether the property at issue was actually recreational, the Second District went on to address the plaintiff's argument that section 3-106 should not apply because the unnatural accumulation did not constitute a "condition" of the property because it was not affixed to the property. *Callaghan*, 401 Ill. App. 3d at 299. The Second District disagreed with *Stein*'s statement that an item must be affixed to property in order to constitute a "condition" of that property, both because the Act's definition of "public property" included movable personal property (see 745 ILCS 10/3-101 (West 2008)) and because prior court decisions had applied section 3-106 immunity to movable conditions of public property. See *Callaghan*, 401 Ill. App. 3d at 299-300 (citing *Sylvester*, 179 Ill. 2d 500 (movable concrete car stop), *Kayser v. Village of Warren*, 303 Ill. App. 3d 198, 707 N.E.2d 285 (1999) (movable chair propping exit door open), *Majewski v. Chicago Park District*, 177 Ill. App. 3d 337, 532 N.E.2d 409 (1988) (broken glass on football field)).

¶ 14    The First District recently took up the issue again and issued a third conflicting appellate court decision in *Moore v. Chicago Park District*, 2011 IL App (1st) 103325. In *Moore*, the First District considered a certified question asking whether an unnatural accumulation of snow and ice constitutes a condition of public property under section 3-106. The *Moore* majority answered that question in the negative, by following *McCuen*'s analysis of the hayrack accident to state that the snow accumulation was created by an employee's activity (moving the snow) rather than the condition of the property. *Moore*, 2011 IL App (1st) 103325, ¶ 18. The majority further explained that, to the extent there was a conflict, it would follow *Stein* over *Callaghan*, and it therefore reasoned that snow cannot be a "condition" because it is temporary and not affixed to the property as *Stein* requires. *Moore*, 2011 IL App

(1st) 103325, ¶¶ 13-16. In her dissent, Justice Connors argued, persuasively, that the majority had misunderstood *McCuen* and that it was not the action of moving snow that harmed the plaintiff, but the snowy and icy condition of the property. *Moore*, 2011 IL App (1st) 103325, ¶¶ 21-27 (Connors, J., dissenting). Justice Connors also would have eschewed movability–an idea that the supreme court did not rely on in McCuen–as a factor in determining whether something constitutes a "condition" of property; she would have instead focused entirely on whether "a plaintiff's injury was caused by the property itself or by an activity conducted on it." *Moore*, 2011 IL App (1st) 103325, ¶ 26 (Connors, J., dissenting).

¶ 15        Because we view as binding the supreme court decisions described at the outset of this discussion, we need not resolve any conflicts in the above appellate court decisions. To the extent those appellate court decisions conflict with the supreme court's approach in *Sylvester* and *Rexroad*, we, of course, follow the supreme court. See *Robinson v. Johnson*, 346 Ill. App. 3d 895, 907, 809 N.E.2d 123 (2003) (stating that supreme court decisions bind lower courts). As we indicated above, the supreme court has rather clearly indicated that a movable, nonaffixed item may constitute a "condition" of real property under section 3-106. Further, to the extent the appellate court decisions suggest that the permanence of a movable item's placement on recreational property should be a factor in determining whether it constitutes a "condition" of that property, we see no reason to distinguish the parking abutment in *Sylvester* from the sign here, which our certified question stipulates remained stationary for the entire summer season.

¶ 16        For these reasons, we answer the first certified question in the affirmative. A stationary but movable warning sign sitting in the same location in the outdoor food court of the Park Place Café in the Lincoln Park Zoo for the Zoo's summer season does constitute "a condition of any public property" under section 3-106 of the Act.

¶ 17        Our answer to the first certified question renders moot the second certified question, which asks whether a sign of the type at issue here qualifies as something "affixed to the property" under *Stein*. Because the supreme court has interpreted section 3-106 "conditions" as including even items that are not affixed to recreational property, *Stein*'s "affixed to the property" qualification has no basis in Illinois law.

¶ 18        The third certified question asks whether a sign of the type at issue here can qualify as "public property" under section 3-106. Our answer to this question is that it can, because the Act very clearly defines "public property" as including "real or personal property owned or leased by a local public entity." 745 ILCS 10/3-101 (West 2008). We note, however, that our answer to this question does not address the issue of whether the plaintiff's alleged injury was caused by a "condition" of the sign; that is, we are not called upon to, and we do not, decide whether the location of personal property constitutes a "condition" of that personal property.

¶ 19        The fourth, and final, certified question asks whether *Stein*'s "affixed to the property" qualification remains in force. For the reasons discussed above, we answer that it does not.

¶ 20        In summary, we answer the first certified question in the affirmative, the third certified question in the affirmative, and the fourth certified question in the negative. We deem the second certified question moot.

¶ 21    Certified questions answered; cause remanded.